**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LAMAR ELECTRIC MEMBERSHIP CORPORATION, Respondent.**

**No. 22444.**

United States Court of Appeals
Fifth Circuit.

June 22, 1966.

---

Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin Pollack, Atty., N. L. R. B., Washington, D. C., for petitioner.

Alexander E. Wilson, Jr., Alexander E. Wilson, III, Atlanta, Ga., Harvey J. Kennedy, Jr., Barnesville, Ga., for respondent.

Before GEWIN and BELL, Circuit Judges and HUGHES, District Judge.

GRIFFIN B. BELL, Circuit Judge.

The Board seeks enforcement of its order finding that Respondent violated § 8(a) (5) and (1) of the National Labor Relations Act by refusing to bargain with the union [1] certified by the Board as the exclusive bargaining representative of Respondent's employees in a particular unit. 29 U.S.C.A. § 158(a) (5) and (1). The refusal to bargain was the means chosen by Respondent to test the validity of the representation proceeding which resulted in the certification of the union. We conclude that Respondent should have been granted a hearing on its contention that the union was assisted in its organizational campaign by the advocacy of a supervisory employee. Thus we deny enforcement.

The background facts include a representation petition filed by the union with the Board on April 23, 1963, and a motion by Respondent, filed on May 20, 1963, to dismiss that petition. Respondent's motion, *inter alia,* contended that James E. Stallings was a supervisor and that as such he had attended union meetings with the employees of Respondent during the organizational campaign, that he transported some of the employees to the meeting, and that he used his influence as a supervisor to obtain signatures on the union authorization cards which were being sought. It was later determined that Stallings was a supervisor but it is clear that Respondent knew of the activity of Stallings for the union, and the record is devoid of any showing whatever that Respondent attempted to dissipate Stallings' efforts.

We held in NLRB v. Air Control Products of St. Petersburg, Inc., 5 Cir., 1964, 335 F.2d 245, that advocacy of the union by supervisory personnel, unknown to the employer, is cause for annulment of the election. However, we also said that where the employer knows of the advocacy and takes no steps to dissipate its effect, such advocacy may not be used as

---

1. International Brotherhood of Electrical Workers, AFL-CIO.

a basis for setting aside the election. The reasoning was that the employer in such case would be taking advantage of wrongdoing for which he had an operational responsibility. It was in his power to remedy the situation. We recently applied this rule in a case involving the known union advocacy of five supervisory employees. NLRB v. Douglas County Electric Membership Corporation, 5 Cir., 1966, 358 F.2d 125. There the employer acted to remedy the situation. We held that the conduct of the supervisors, when viewed in the light of the knowledge of the employer of their conduct and the steps taken by the employer to dissipate the effect of their conduct, was not such as would afford a basis for the employer challenging the election; and hence it was not error to deny the employer a hearing on the challenge.

■ The rule that an employer is barred by knowledge of the conduct of the supervisor and subsequent inaction is applicable here. The Board did not commit error in denying Respondent a hearing on its contest of the election based on the conduct of supervisor Stallings. Respondent knew of his conduct and made no effort to counteract his conduct. NLRB v. Air Control Products, Inc., supra.

The situation with respect to Superintendent Potts is quite different. Mr. Potts was the number two man in Respondent's organization. It was stipulated that he was a supervisor. He was in charge of all of Respondent's outside employees. The election was to be held on August 7, 1963. On the night of August 6, counsel for Respondent wired the Regional Director of the Board that it was refusing to participate in the election because "Superintendent Potts * * * tonight joined union organizer Robinson in coercing * * *" employees to vote for the union. The election was held the next day off the company premises. The union prevailed and Respondent challenged the election by filing written objections.

■ The Regional Director made an investigation of the election and filed a decision based thereon. The rules of the Board, 29 CFR 102.69, provide for a hearing on a challenge to an election where substantial and material factual issues are raised. We held in NLRB v. O. K. Van Storage, Inc., 5 Cir., 1961, 297 F.2d 74 that an objecting party, to be entitled to a hearing on its objections to an election, must supply the Board with specific evidence which prima facie would warrant setting aside the election. See also NLRB v. Vulcan Furniture Manufacturing Corp., 5 Cir., 1954, 214 F.2d 369, cert. den., 348 U.S. 873, 75 S.Ct. 109, 99 L.Ed. 687. A review of the evidence that was before the Regional Director is thus indicated.

We are not faced with any contention that Respondent knew of any union advocacy on the part of Superintendent Potts prior to the eve of the election. Mr. Potts attended a meeting of the employees on August 6, the day preceding the election. The meeting was under the sponsorship of the union. He brought the crews into the plant earlier than usual on the day of the election. He attended a union celebration on the night of the election. He made threats of physical and economic harm to one of the two employees who voted against the union on the day following the election.

Respondent alleged that Potts urged the employees present at the meeting on August 6 to vote for the union but the Regional Director concluded from his own investigation that this was not true. The Regional Director found that Potts did in fact attend a meeting of the employees sponsored by the union on August 6, which meeting was held in an open rural area near Barnesville, Georgia, but that Potts remained several feet from the group while the meeting was in progress and did not participate in it. The Regional Director faulted the employer for not adducing evidence during the investigation to support the contention that Potts urged the employees to vote for the union. He was of the opinion that the mere presence of Potts at the

meeting did not interfere with the freedom of choice of the employees. He found that the fact that Potts brought the employees in early on the day of the election resulted from a misunderstanding with Respondent's general manager. The Regional Director stated that no evidence was presented to show that Potts attended any other meeting during the organizational campaign except for the statement of Respondent's general manager and local counsel who both stated to the Regional Director that Potts had told them that he had attended one earlier meeting of the union. The Regional Director uncovered additional evidence on his own that Potts had stated to another employee two days before the election that "the only way we're ever going to have anything is to have a union because the board isn't going to do a thing for us and if we get anything we'll have to get it for ourselves."

■ We first hold that this evidence made out a prima facie case of supervisory coercion on the part of Mr. Potts and that a hearing was required. Rather than conducting a hearing, the Regional Director made short shrift of the prima facie case by holding that Potts did not make a speech at the August 6 meeting of the union, disregarding the information that Potts had attended another meeting of the union, stating that the evidence of attendance at the victory celebration and the threat of physical and economic harm to one of the employees who voted against the union was irrelevant because of having occurred subsequently to the election, and by disregarding the statement that Potts made to the other employee regarding the need for a union as being

isolated. This treatment of the matter by the Regional Director would obviate the necessity of ever having a hearing on objections to an election. The disputed facts were resolved without testimony under oath, without cross-examination, and without the procedural safeguards of a hearing.[2]

Having established a prima facie case, Respondent was then entitled to a hearing. The Board denied the request of Respondent for review of the Regional Director's decision, and the Respondent then refused to bargain. The hearing examiner on the unfair practice complaint which followed, refused to permit the Respondent to contest the election. The hearing examiner was of the view that the matter was foreclosed by the action of the Regional Director and the denial of review by the Board. Thus, Respondent has been deprived of any hearing whatsoever on its prima facie showing of supervisor coercion. It was entitled to be heard. The case of NLRB v. Lord Baltimore Press, Inc., 4 Cir., 1962, 300 F.2d 671 is very much in point. There the Board was directed to afford a hearing. The order was set aside. The order of the Board here will be set aside with direction that the Board afford Respondent a hearing on its objections to the election as those objections center on Superintendent Potts. See also NLRB v. Tampa Crown Distributors, Inc., 5 Cir., 1959, 272 F.2d 470; NLRB v. Dallas City Packing Company, 5 Cir., 1956, 230 F.2d 708; and NLRB v. Poinsett Lumber & Manufacuring Company, 4 Cir., 1955, 221 F.2d 121.

Order set aside and case remanded to Board for further proceedings not inconsistent herewith.

2. At the hearing on the unfair practice, Respondent made a proffer of evidence which, if established, would make a much stronger case for contesting the election. That evidence, in part, was that the union organizer would testify that he contacted Mr. Potts, a member of the same union, prior to beginning the organizational campaign, for the purpose of organizing the employees of Respondent and that Potts set up a meeting of the employees and ordered each one to attend; that they did attend that meeting during April 1963, and Mr. Potts thereupon urged them to affiliate with the union. The proffer included corroborating evidence from other employees. However, whether or not Respondent is now entitled to a hearing depends on the showing made before the Regional Director on its objections to the election and not on the proffer at the unfair practice hearing.