NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

ROSELON SOUTHERN, INC., Respondent.

No. 17248.

United States Court of Appeals Sixth Circuit.

Aug. 25, 1967.

⊜⊸67

William J. Avrutis, N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, George B. Drie-sen, Atty., N. L. R. B., Washington, D. C., on brief, for petitioner.

Geofrey J. Cunniff, Bala-Cynwyd, Pa., for respondent.

Before CELEBREZZE, PECK and McCREE, Circuit Judges.

CELEBREZZE, Circuit Judge.

The National Labor Relations Board seeks enforcement of its Order issued against the Respondent, Roselon Southern, Inc. (Company) on June 4, 1965. The Board found that the Company violated Section 8(a) (5) and (1) of the Act[1] by refusing to bargain with the Union[2]; and further that the Company violated Section 8(a) (1) of the Act by threatening a plant shutdown in event of unionization and promising benefits to influence a representation election; and, finally, the Board found that the Company violated Section 8(a) (3) and (1) of the Act by discriminately laying off and refusing to recall employee Morris Smith. The Company here contests only the 8(a) (5) and (1) violation, refusal to bargain with the Union. Only the facts pertinent to this issue will be discussed. The Board's decision and order are reported at 152 N.L.R.B. 1173.

Organization of the Company's employees began about July 11, 1963. On July 16, 1963, the Union filed its petition for certification. The election was held on August 22, 1963; the Union winning the election 60 to 53.

The Company employed four men on each shift, called "fixers", whose responsibilities included keeping the machines in good running condition, assigning men to their work stations; transferring men from one department to another; correcting an operator if he was not following prescribed procedure; issuing warning slips after receiving instructions from the foreman or supervisor—three such warning slips could result in discharge.

The evidence disclosed that most of the fixers participated in the Union's organ-

---

1. 29 U.S.C.A., Section 158.

2. Allied Industrial Workers of America, AFL–CIO, Region No. 4.

izational effort. Many employees were signed up through the efforts of the fixers, and three Union meetings were held at the home of one fixer.

In addition to the fixers, the Company also employed an instructor on each shift. Miss Claudia Beaty was the instructor in the Crimping Department on the third shift. Miss Beaty was responsible for assigning the ten women in her department to the machines they were to operate, and she gave them their work assignment. She was also required to train new operators, and to give a progress report on the new operators to the supervisor. Miss Beaty was to patrol the machines to see that they were operating properly and that the yarn coming from the machines was of good quality. Miss Beaty was given the authority to discipline any of the employees working on the machines in her department and she was authorized to issue warning slips without checking with the foreman or supervisor. On one occasion, she informed the supervisor that one of the operators refused to follow her instructions. The supervisor then talked to the operator and disciplined her.

During the campaign Miss Beaty signed for the Union all but two of the operators in her department. During the election campaign Miss Beaty told one of her operators that she was wrong in not signing a Union card, and that eventually those who did not sign a card would lose their jobs.[3] On one occasion Miss Beaty heard two fixers say that the two fixers in her department "should have the hell beaten out of them" for not going along with the Union.

The Board found that the fixers were supervisors and therefore ineligible to vote. The Board rejected the Company's contention that the supervisory fixers had coercively participated in the election campaign since no election campaigning had been shown to have occurred after July 16, 1963 when the Union filed its election petition. The Board further found that Miss Beaty's pre-election conduct was not coercive since she was found not to be a supervisor.

The Company contends that Miss Beaty was a supervisor within the meaning of 29 U.S.C.A., Section 152(11) (Section 2(11) of the Act as amended). The Act defines "supervisor" as follows:

"The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment (29 USC Sec. 152)."

The criteria set forth in the statute are to be read in the disjunctive and if the instructors perform any one of the functions set forth in the statute, they meet the test of a supervisor. Ohio Power Co. v. N. L. R. B., 176 F.2d 385, 11 A.L.R.2d 243 (C.A. 6, 1949); Eastern Greyhound Lines v. N. L. R. B., 337 F.2d 84 (C.A. 6, 1964). It is not necessary that the employee is required to regularly and routinely exercise the powers set forth in the statute. It is the existence of the power which determines whether or not an employee is a supervisor. Ohio Power Co. v. N. L. R. B., 176 F.2d 385 (C.A. 6, 1949) supra.

The previously mentioned duties of Miss Beaty show that she had the power to inspect the quality of work of the machine operators, train new employees and give a report on their progress. As a result of her own judgment, she could issue warning slips, she had the authority to discipline any of her workers, and in fact reported one operator for disciplinary action. This was certainly supervisory conduct within the meaning of the Act. See N. L. R. B. v. Beaver Meadow Creamery, Inc., 215 F.2d

---

3. The Board admits this statement might warrant setting aside the election if Miss Beaty was found to be a supervisor.

247 (C.A. 3, 1954); and Eastern Greyhound Lines v. N. L. R. B., 337 F.2d 84 (C.A. 6, 1964), supra.

Miss Beaty personally signed eight of the ten operators in her department. She admitted she made it quite clear that anyone who did not support the Union might lose their job. Her duties were not substantially different from the duties of the fixers who were found by the Board to be supervisory personnel.

 Finding that Miss Beaty was a supervisor within the meaning of the Act, and that her pre-election conduct coercively and prejudicially affected the other employees, we do not have to consider whether the conduct of the fixers occurred during the period of July 16th and August 22nd.

The Board erred in refusing the Company's request that the election be set aside and a new one ordered. The portion of the Board's order finding an 8(a)(5) violation and requiring the Company to bargain with the Union will not be enforced.