**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Respondent.**

**No. 78; Docket 32135.**

United States Court of Appeals
Second Circuit.

Argued Oct. 17, 1968.

Decided Dec. 18, 1968.

Corinna Lothar Metcalf, Atty., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Warren M. Davison, Atty., N.L.R.B., for petitioner.

George G. Gallantz, Thomas F. Delaney, James M. Samples, Proskauer, Rose, Goetz & Mendelsohn, New York City, for respondent.

Before WATERMAN and MOORE, Circuit Judges, and BONSAL, District Judge.*

WATERMAN, Circuit Judge:

This case is before this court upon the petition of the National Labor Relations Board for the enforcement of its order against the respondent, Metropolitan Life Insurance Company (hereinafter referred to as Metropolitan), issued on March 23, 1967. The Board's decision and order are reported at 163 N.L.R.B. No. 71. The alleged unfair labor practices having occurred in New York City, where Metropolitan is engaged in the sale of various forms of insurance, this court has jurisdiction of the proceeding.

* Of the Southern District of New York, sitting by designation.

Labor-Management Relations Act, 1947, § 10(e), 29 U.S.C. § 160(e).

Metropolitan's home office, located at One Madison Avenue, New York, N. Y., comprises two large building complexes, known as the North and South Buildings. Each individual building has engineering crews which maintain and operate various equipment in the building in three eight hour shifts. This equipment consists of, *inter alia*, heating and air conditioning installations, special air conditioning equipment for computers, ventilation devices, water and sanitary systems, pneumatic tubes, fans and refrigeration systems, and commissary and laundry equipment. Under the engineering division's chief engineer and his assistant, Metropolitan has an authorized complement of 79 employees attached to the operating crews. This complement includes one air conditioning engineer, four assistant air conditioning engineers, three operating engineers, nine watch engineers, six assistant watch engineers, seven engineers' assistants, eleven engineers' helpers, seventeen general helpers, and twenty-one wipers.

On June 18, 1965, pursuant to Section 9(c) of the Labor-Management Relations Act, 1947, 29 U.S.C. § 159(c), International Union of Operating Engineers, Locals 30–A, 30–B, and 30–C, AFL–CIO (hereinafter referred to as Local 30), filed with the Board its petition setting forth that it was entitled to represent the engineering division crews which maintain and operate the above described equipment. On August 9, a representation hearing was held, in which both Local 30 and Metropolitan participated.

On September 20, 1965, based upon the record in the representation hearing, the Regional Director issued his Decision and Direction of Election.[1] He concluded that the operating engineers, the air conditioning engineers, the assistant air conditioning engineers, and the watch engineers were all supervisors within the meaning of Section 2(11) of the Act. He found the following group of employees to be an appropriate unit for collective bargaining:

All assistant watch engineers, engineer assistants, engineer helpers, general helpers and wipers employed in the operating crew of the Employer's engineering division at One Madison Avenue * * *.

Although Local 30 did not object to the exclusion of the operating engineers and the air conditioning engineer, it maintained that the assistant air conditioning engineers and the watch engineers did not possess supervisory authority but were merely employees and therefore should be included in the collective bargaining unit. Consequently, the Local filed a timely request with the Board for review of the Regional Director's determination. By telegraphic order, dated November 5, 1965, the Board granted review and stayed the election the Regional Director had ordered.

In its Decision on Review the Board concluded that the watch engineers and the assistant air conditioning engineers were not supervisors and included them in the unit. Thereafter a secret ballot election was held on July 20, 1966 and forty-nine votes were cast in favor of Local 30 and twelve against representation. On July 28, 1966 the Regional Director certified Local 30 as the representative of the employees in the designated unit.

Following the certification Local 30 requested recognition and bargaining. Metropolitan formally declined this request on September 15, 1966. Local 30 then filed with the Board an unfair labor

1. The Board, pursuant to Section 3(b) of the Labor-Management Relations Act, 1947, has delegated to its Regional Directors its powers under Section 9 of the Act to determine the units appropriate for collective bargaining, to investigate and provide for representation hearings, and to direct elections. See, generally, W. Little, The Role of the Regional Director in NLRB Representation Cases, 42 Ind.L.J. 510 (1967).

practice charge and the General Counsel issued a complaint alleging that the refusal to recognize and to bargain violated Section 8(a) (5) and (1) of the Act. Metropolitan's answer admitted the refusal to bargain, but asserted that the refusal was lawful because the Board's determination that included the watch engineers and assistant air conditioning engineers in the bargaining unit was erroneous. The General Counsel thereupon moved for summary judgment on the ground that the only issue raised in defense had already been determined in the representation hearing adversely to Metropolitan.

On December 6, 1966 the Board issued a Notice to Show Cause why the motion for summary judgment should not be granted. Metropolitan's Memorandum in Opposition to the summary judgment motion did not assert that there was any newly discovered evidence relative to whether the watch engineers and assistant air conditioning engineers were supervisors but contended only that the Board's unit determination was incorrect.

Noting the absence of an allegation of special circumstances, the Board refused to reexamine the determination made in the representation proceeding, concluded that there were no material factual issues requiring a hearing, and granted the General Counsel's motion for summary judgment. Accordingly, the Board found Metropolitan's admitted refusal to bargain violative of Section 8(a) (5) and (1) of the Act, and ordered Metropolitan to bargain with Local 30 upon request and to post an appropriate notice. It is this order that the Board petitions us to enforce.

█ Under Section 9(b) of the Labor-Management Relations Act, 1947, the only persons who may properly be included by the Board in the units it deems appropriate for collective bargaining purposes are "employees." Excluded from the term "employee" is "any individual employed as a supervisor." Labor-Management Relations Act, 1947, §

2(3), 29 U.S.C. § 152(3). Section 2(11) of the Act defines "supervisor" as

> * * * any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

Persons who fall within this classification of "supervisors" are consequently not entitled to the protections accorded "employees" under the Act and their employers are under no obligation to bargain with a union if the union's bargaining unit includes such persons. Therefore, if the persons whose status Metropolitan questions are supervisors, as defined by the Act, Metropolitan is not guilty of any Section 8(a) (5) and (1) unfair labor practice, and the Board's order should not be enforced by this court.

█ The question of whether the watch engineers and the assistant air conditioning engineers are supervisors is essentially a question of fact, the answer to which must turn on the powers they are authorized to exercise. E. g., Precision Fabricators v. NLRB, 204 F. 2d 567, 568 (2 Cir. 1953); NLRB v. Esquire, Inc., 222 F.2d 253, 257 (7 Cir. 1955). Inasmuch as infinite variations and gradations of authority can exist within any one industrial complex and any drawing of the line between the personnel of management and the rank and file workers may require some expertise in evaluating actual power distributions which exist within an enterprise, the Board's findings relative thereto are entitled to great weight. E. g., Warner Company v. NLRB, 365 F.2d 435, 437 (3 Cir. 1966); NLRB v. Swift and Company, 292 F.2d 561, 563 (1 Cir. 1961). But if the Board's determination is not

supported by substantial evidence on the record considered as a whole, a Court of Appeals ought not enforce a Board order which is based on an unsupported determination. Labor-Management Relations Act, 1947, § 10(e), 29 U.S.C. § 160(e); see, generally, Jaffe, Judicial Control of Administrative Action, 595–624 (1965). We have carefully examined the record here and we hold that the Board's findings that the engineers whose status is at issue are not supervisors as defined by Congress in the Act are not supported by substantial evidence in the record.

■ The evidence presented at the representation hearing establishes that, among other duties, the watch engineers and the assistant air conditioning engineers are primarily responsible for the operation and maintenance of the equipment under their control, that they assign, direct, and supervise the work of the men in their respective crews, and that they have certain important personnel responsibilities.[2] However, inasmuch as Section 2(11) is written in the disjunctive, and so just the possession of any one of the listed powers is sufficient to cause the possessor to be classified as a supervisor even if the power is not customarily exercised, Ohio Power Co. v. NLRB, 176 F.2d 385, 387 (6 Cir.), cert. denied, 338 U.S. 899, 70 S.Ct. 249, 94 L.Ed. 553 (1949); NLRB v. Roselon Southern, Inc., 382 F.2d 245, 247 (6 Cir. 1967); West Penn Power Company v. NLRB, 337 F.2d 993, 996 (3 Cir. 1964); NLRB v. Fullerton Publishing Company, 283 F.2d 545, 548 (9 Cir. 1960); NLRB v. Beaver Meadow Creamery, 215 F.2d 247, 251 (3 Cir. 1954), it is unnecessary to discuss each of the responsibilities delegated to these engineers and to recite all the evidence supporting the

2. The evidence presented at the representation hearing supports the Regional Director's decision that the watch engineers and the assistant air conditioning engineers are supervisors. The Regional Director's Decision and Direction of Election (Case No. 2–RC–14011) discussed the functions and responsibilities of those individuals. According to the Regional Director:

The *assistant air conditioning engineers* are in immediate control of the air conditioning equipment in both buildings. They direct the work of crews which consist of varying numbers of engineer helpers, general helpers and wipers. They have the authority to assign work to the crew members, to discipline and transfer them from one job to another. Moreover, they grant time off and overtime, set vacation schedules, give regular performance ratings to crew members which are relied upon for promotions and raises and make the "Initial Performance Report" which is used in the hiring decision.

There are nine *watch engineers* and one directs a crew in each building at all times. The watch engineers, who are under the direction of the operating engineer on duty, rotate shifts and buildings. Each watch engineer has a crew of from four to nine employees classified as assistant watch engineers, engineer assistants, engineer helpers, general helpers and wipers. The watch engineer is responsible for the proper functioning of the operating equipment. He investigates complaints of leaks and malfunctioning of equipment, assigns crew members to make repairs, inspects equipment and checks on its performance. It appears that the watch engineer spends 70% of his time inspecting equipment, the balance maintaining records, making logs and reports and assigning work. The watch engineer does not hire, fire or promote but effectively recommends such action by making performance ratings and the "Initial Performance Report." He transfers employees, grants time off, gives overtime, disciplines, adjusts minor grievances and sets vacation schedules. Like the assistant air conditioning engineer, the watch engineer wears a suit rather than overalls, does not punch in, uses the dining room and locker facilities reserved for foremen and supervisors, and takes the Employer's course for supervisors. As it appears that the assistant air conditioning engineers and the watch engineers responsibly direct the work of their crew members and have many of the indicia of a supervisor as defined in the Act, it is found that they are supervisors within the meaning of the Act and they are excluded from the unit.

Unquestionably, persons who exercise the powers enumerated by the Regional Director are supervisors within the meaning of Section 2(11).

existence of each responsibility. Therefore, our discussion will be limited to one obvious set of management powers which the engineers whose status is questioned possessed and exercised.

Although the watch engineers and the assistant air conditioning engineers do not hire, fire, or promote, they effectively recommend such action. This arises from the fact that they submit to upper level management the basic appraisal of the performance of the employees in their operating crews.[3] Within a month of hiring, each new employee in the operating crews is appraised on an "Initial Performance Report"[4] by his watch engineer or his assistant air conditioning engineer. The purpose of this report is to determine whether the new employee is capable of handling the job or whether his performance is such as to suggest that his transfer or discharge be con-

3. The position of the watch engineers and the assistant air conditioning engineers in relation to the members of the various operating crews is discussed in footnote 2, supra.

---

4 INITIAL PERFORMANCE REPORT

Name .................................................. Job Title ..............................................

Division ........................ Section ..................... Job Service Date .....................

The prime objective of an initial performance report evaluating a new employee or a transferee is to identify promptly a possible malassignment.

Please check the answers to the following questions and return this form no later than ............................ .

1. Does the employee's performance to date indicate that he has the qualifications necessary to meet the requirements of his job? Yes ☐ No ☐

2. Does he display the proper attitude toward:

 (a) His associates? Yes ☐ No ☐

 (b) The Company? Yes ☐ No ☐

3. Has he displayed any shortcoming(s) which should be corrected? Yes* ☐ No ☐

 * If "Yes", describe. Also explain what corrective action has been or can be taken.

..............................................................................................................

..............................................................................................................

..............................................................................................................

..............................................................................................................

..............................................................................................................

..............................................................................................................

 (continue on reverse side, if necessary)

4. Has his performance been such as to warrant consideration for release from his present position? Yes ☐ No ☐

Completed By .................................................. Date ..........................................

Reviewed By (Initials) ..............................................................................

Discussed with employee on ........................ Signature ..............................

B.146C–X

sidered. Additionally, approximately every six months, the watch engineers and the assistant air conditioning engineers prepare a form entitled "Performance Review—Non-Supervisory Employees."[5] The testimony as to these

---

[5]

| 5 | PERFORMANCE REVIEW | Annual ☐ |
|---|---|---|
| | Non-Supervisory Employees | Semiannual ☐ |

Name ......................................................... Period Ending ...................................

Division ................................................. Section ...............................................

Job Title ............................................. Job Service Date ..............................

Place a check in the column which most closely describes the extent to which there is need for the employee's improvement in each of the factors listed.

| FACTORS | NEED FOR IMPROVEMENT | | | |
|---|---|---|---|---|
| | None | Little | Moderate | Much |
| KNOWLEDGE OF WORK: Consider the extent to which the employee knows what he is doing and why. | | | | |
| QUALITY OF WORK: Consider the accuracy, thoroughness and neatness of work. | | | | |
| QUANTITY OF WORK: Consider the amount of work completed. If the amount of work is very difficult to measure, take into consideration working speed, the tendency to loiter on the job, and the extent to which work is kept up to schedule. | | | | |
| COOPERATION: Consider the extent to which the employee willingly helps co-workers, accepts constructive criticism, avoids irritating others, considers the rights and feelings of others, avoids antagonistic attitudes, and the extent to which the employee gets along with others. | | | | |
| CARE OF PROPERTY: Consider the amount of care exercised by the employee to prevent damage and avoid misuse of Company property and equipment. | | | | |
| SAFETY: Consider the extent to which the employee practices all precautionary measures necessary to protect himself and others from injury. | | | | |

reports showed that they were ordinarily the sole basis upon which upper-level management decided those members of the operating crews that should be pro-

---

| | ABSENCE | | LATENESS |
|---|---|---|---|
| | Times | Days | |
| Illness | ——— | ——— | Times ——— |
| Other | ——— | ——— | |
| Total | ——— | ——— | |

### OVER-ALL EVALUATION

Please give your opinion of this employee's present over-all worth to the Company by checking one of the following statements:

☐ 1. One of the very few outstanding employees I know.

☐ 2. An excellent employee of great value to the Company.

☐ 3. An acceptable and generally satisfactory employee.

☐ 4. A marginal and barely adequate employee.

☐ 5. An unsatisfactory employee (specify in "Comments" section action taken, pending, or recommended.)

IF AN INCREASE IS AVAILABLE:

DO YOU RECOMMEND SAME? ........

AMOUNT RECOMMENDED ....................

SIGNED: ................................................

(*See Reverse Side*)

### POTENTIALITY

Consider the employee's potentialities for future advancement and indicate your opinion by checking the appropriate space below:

☐ Below Average ☐ Average ☐ Above Average ☐ Exceptional

Indicate the employee's supervisory potential by checking one of the following spaces:

☐ Doesn't Possess Supervisory Potential ☐ Possesses Supervisory Potential

COMMENTS:—Use the following spaces if, in your opinion, this report needs to be explained by reason of unusual or special circumstances, or if the employee has special abilities or weaknesses which should be noted. Submit a separate memorandum, if confidential.

----------------------------------------------------------------------------------

----------------------------------------------------------------------------------

----------------------------------------------------------------------------------

Rated by ............................................................... Date ............................

Reviewed by (Initials) ........................................................................

Discussed with employee on .................................... Signature .......................

moted or that should receive merit pay increases. The reports were also used in deciding whether an employee should be discharged or demoted. The uncontradicted testimony was that no member of the operating crews was promoted without the recommendation of his watch engineer or assistant air conditioning engineer and that an employee who was not so recommended was not considered for a merit pay increase by upper-level management.

█ These reports so submitted by the watch engineers and the assistant air conditioning engineers were received by their immediate supervisors.[6] If the watch engineers' or the assistant air conditioning engineers' immediate supervisors disagreed with the evaluations they could note the basis of their disagreement on the back of the form. This power to review held by the immediate supervisors of the engineers whose status is at issue does not demonstrate that the latter are not "supervisors" under the Section 2(11) definition. The power to recommend promotion is, of course, not the power actually to promote and consequently promotion recommendations will always be subject to review by those others who, in fact, have the final power to promote. If, however, there are personnel in an organization who are empowered to make by their independent evaluations recommendations relative to promotions and pay of other personnel, and these recommendations are acted upon by higher-level management, it would seem obvious that the status of those who are so empowered should be carefully inquired into to see whether they should be classified as "supervisors."

Here the record shows that a favorable report was an essential prerequisite to a promotion or merit increase and therefore the effectiveness of a recommendation in the report is undisputed. An examination of the forms required to be filled out by the watch engineers and the assistant air conditioning engineers (which are set out in footnotes 4 and 5) reveals that these evaluations require the formation of sensitive judgments about the performance, potential, and character of each crew member, and there is no evidence indicating that this was not the manner in which the forms were filled out.

On the basis of this evidence, it is clear that the Board's findings are not supported by substantial evidence. The watch engineers and the assistant air conditioning engineers possess and exercise the power effectively to recommend promotions and merit increases as well as to appraise performance; powers which in the past have been considered indicia of the possessor's supervisory status. Power Regulator Company v. NLRB, 355 F.2d 506, 508 (7 Cir. 1966); see Benson Veneer Company v. NLRB, 398 F.2d 998, 1000 (4 Cir. 1968); NLRB v. Roselon Southern, Inc., supra; NLRB v. Gary Aircraft Corp., 368 F.2d 223, 223–224 (5 Cir. 1966), cert. denied, 387 U.S. 918, 87 S.Ct. 2032, 18 L.Ed.2d 971 (1967); NLRB v. Elliott-Williams Co., 345 F.2d 460, 463 (7 Cir. 1965); NLRB v. Charley Toppino & Sons, Inc., 332 F.2d 85, 86 (5 Cir. 1964); West Penn Power

---

6. There are three shifts of watch engineers' crews, with two crews on each shift. The crews usually work five days a week. There is one operating engineer on each shift and he is the immediate supervisor of the two watch engineers on that shift. This operating engineer reviews the recommendations of his watch engineers and forwards their reports to the personnel office of Metropolitan where final action is taken on the submitted reports.

There are only two shifts of assistant air conditioning engineers' crews. They also work a five day week. There is only one air conditioning engineer, and he is the immediate supervisor of the four assistant air conditioning engineers. The one assistant air conditioning engineer who works the 3:45 P.M. to 11:45 P.M. shift is "supervised" after 4:45 P.M. by the operating engineers who supervise the evening shift of watch engineers. The reports of the assistant air conditioning engineers are reviewed and submitted to the personnel office in the same manner as those of the watch engineers.

Co. v. NLRB, supra at 999; NLRB v. Chautauqua Hardware Corp., 192 F.2d 492, 494, n. 2 (2 Cir. 1951); cf. NLRB v. Southern Airways Company, 290 F.2d 519 (5 Cir. 1961).

■ Of course if, which is not the fact here, the appraisals and recommendations were only of a routine or clerical nature, and were ineffective actually to accomplish changes in promotions or in pay, an entirely different case would be presented.

■ The result we reach in this case is consistent with the underlying policies of the Act. The exclusion of supervisors from the protections of the Act and from bargaining units was designed, in part, to protect employees from supervisor influence within the union's organization. If supervisors were members of and active in the union which represented the employees they supervised it could be possible for the supervisors to obtain and retain positions of power in the union by reason of their authority over their fellow union members while working on the job. Local 636, United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, 109 U.S. App.D.C. 315, 287 F.2d 354, 360–361 (1961). Exclusion of those with supervisory powers prevents this pattern from occurring.

Inasmuch as we are holding that the Board's order should not be enforced, we now turn to a consideration of the proper remedy to be ordered. The usual remedy for a Court of Appeals to prescribe in a case such as this one is to order that the election be set aside. E.g., Eastern Greyhound Lines v. NLRB, 337 F.2d 84 (6 Cir. 1964); Warner Company v. NLRB, supra; cf. NLRB v. Roselon South-

ern, Inc., supra. However, having in mind that we might not enforce its order, the Board, in that event, requested a rather novel disposition of the case. It suggested to us that the case be remanded to it with directions to certify the union as the employees' representative in the unit originally found appropriate for certification by the Regional Director. The Board points out that the Union won the election by a vote of 49 to 12, a margin of 37 votes, and if it is assumed that all four assistant air conditioning engineers and all nine watch engineers voted in the election and that all thirteen of them cast their ballots for the Union, the subtraction of these thirteen votes would still leave the Union with a 36 to 12 victory. Consequently, the Board maintains that the Union is entitled to bargain as the representative of the employees remaining in the unit.

■ Though the requested remedy has been utilized in the past by Courts of Appeals, we know of no case where it has been utilized after an election has been held to determine whether a union should be certified as the bargaining representative of voting employees. E.g., West Penn Power Company v. NLRB, supra; cf. Ohio Power Co. v. NLRB, supra. Accordingly, since it is not known to what extent, if any, the watch engineers and the assistant air conditioning engineers engaged in pro-union activities and perhaps influenced the voting patterns of other employees, we cannot be sure that the "laboratory conditions" [7] the Board holds are essential to a valid election have not been disturbed. See, e. g., NLRB v. Lord Baltimore Press, Inc., 300 F.2d 671, 673 (4 Cir. 1962); NLRB v. Heck's, Inc., 386 F.2d 317, 319 (4 Cir. 1967); NLRB v. Roselon Southern, Inc., supra.[8] The proper remedy,

7. See Boot & Shoe Workers Union (General Shoe Corp.), 77 N.L.R.B. 124, 127 (1948).

8. Inasmuch as the extent of the supervisors' union activities, if any, are not known, we cannot say that their activities may not have influenced the votes of the employees to the extent that the election should be

invalidated. See Dixie Broadcasting Company, 120 N.L.R.B. 869 (1958); Brown-Durkin Company, 118 N.L.R.B. 1603 (1957); Rheem Manufacturing Company, 114 N.L.R.B. 404 (1955). Therefore, certification of the bargaining unit originally defined by the Regional Director is not possible.

therefore, would seem to be to invalidate the election and allow the Board to conduct a new election in the unit that had been deemed appropriate by the Regional Director. If pro-union sentiment is as strong as the Board contends it is, the union will again be chosen the bargaining representive of the employees in the operating crews.

The petition of the Board to enforce its order is denied and the cause is remanded to the Board for action consistent with this opinion.