### NATIONAL LABOR RELATIONS BOARD, Petitioner,
### v.
### DECATUR TRANSFER & STORAGE, INC., Respondent.

#### No. 28612.

United States Court of Appeals, Fifth Circuit.

Aug. 21, 1970.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Herbert Fishgold, Abigail Cooley Baskir, Jonathan M. Marks, Attys., N. L. R. B., Washington, D. C., Walter C. Phillips, Director, Region 10, N. L. R. B., Atlanta, Ga., for petitioner.

William F. Gardner, N. Lee Cooper, John J. McMahon, Jr., Cabaniss, Johnston, Gardner & Clark, Birmingham, Ala., for respondent.

Before JOHN R. BROWN, Chief Judge, and GEWIN and THORNBERRY, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This case again presents the issue of when a hearing is required in an election certification protest. Believing that none is required here, we enforce the order of the Labor Board.

In September 1968 the Union prevailed in a consent election held by the Board at the plant. The Company then filed a timely objection contending that Roy Estrumse, one of its supervisors, had been an organizer and a campaigner for the Union. The Regional Director conducted an administrative investigation and concluded that the Company was aware of the alleged improper activities and had made no attempt to disavow the conduct or to remove its coercive effects. The Company excepted to the Director's report and requested a hearing on the issues. Finding that the Company's objections raised no "material or substantial issues of fact or law which would warrant reversal of the Regional Director's findings," the Board did not hold a hearing and certified the Union.

The Union then attempted to begin bargaining. After the Company had refused several times to do so, the Union filed an unfair labor practice charge under § 8(a) (5) and (1). The Company admitted the refusal so that it could obtain judicial review of the certification. The Company again requested a hearing to present evidence which it said materially bore upon the questions in the representation proceedings. The Trial Examiner granted General Counsel's Motion for Summary Judgment saying the Company had raised no previously unresolved issues. The Board agreed and directed the Company to begin bargaining.

The interference of a supervisor in a union campaign undermines the "laboratory conditions" that should prevail during an election.[1] Yet this Court has a long-established principle that if an employer is aware of a supervisor's Union activities and then stands idly by, the employer may not subsequently rely on the supervisor's conduct for setting aside the election.[2] NLRB v. Lamar Electric Membership Corp., 5 Cir., 1966, 362 F.2d 505, 507. In NLRB v. Air Control Products of St. Petersburg, Inc., 5 Cir., 1964, 335 F.2d 245, 250 we held that to permit an employer to set aside an election after he had acquiesced in a supervisor's misconduct which he knew about before the election would be "allowing the Employer to take advantage of wrongdoing for which he has an operational responsibility."

---

1. See Home Town Foods, Inc. v. NLRB, 5 Cir., 1969, 416 F.2d 392, 396.

2. Apparently both parties and the Board here are assuming that the employee in question was a supervisor although there was evidence to the contrary. For if he was not a supervisor, the activities of the employee would clearly be protected and the case would be over.

The Board need not hold hearings on objections arising out of the election unless it appears that the objections raised present "substantial and material factual issues." 29 C.F.R. 102.69(c), (e). "This qualified right to a hearing is designed to resolve expeditiously questions preliminary to the establishment of the bargaining relationship * * *." NLRB v. Golden Age Beverage Co., 5 Cir., 1969, 415 F.2d 26, 32. To meet this burden the complaining party must make a proffer of specific, non-conclusory evidence which prima facie would warrant setting aside the election. *Lamar, supra,* 362 F.2d at 507; NLRB v. Smith Industries, 5 Cir., 1968, 403 F.2d 889; NLRB v. O. K. Van Storage Co., 5 Cir., 1961, 297 F.2d 74. A hearing is more than a mere formalistic gesture. If "there is nothing to hear, a hearing is * * * senseless and useless." *Air Control Products, supra,* 335 F.2d at 249. Upon examination of this record, we find that the Company did not meet this "heavy burden" and therefore is not entitled to a hearing. Amax Aluminum Extrusion Products Inc. v. NLRB, 5 Cir., 1970, 421 F.2d 394. We find that the Company has not prima facie refuted the finding of knowledge of and acquiescence in the activities.[3]

Two weeks before the election Estrumse pointed out to the Personnel Manager that he was having some problems with another supervisor concerning allocation of equipment between the two. When asked if the Union would help the situation, Estrumse replied, "Well, we've tried everything else." Estrumse said that he had voted against the Union last time, but this time he didn't know what he would do. The Company brushes this conversation off as inconsequential. Furthermore, the Company knew that Estrumse's name was on the list of those who were to vote in the election and made no attempt to do anything about it. The Company never challenged his ballot when he voted in the election.[4] The Company says that had it known the employee was sympathetic toward the Union it would not have put him on the eligibility list. This does not follow at all. It would be greatly to the advantage of the Company to have a supervisor inside the Union regardless of his sympathies. The Company is in much closer contact with its supervisors than with the lower echelon personnel in the Union. Thus if the Company wished to exert influence on the Union or have a reliable pipeline to inside Union thinking, it could do so much easier through supervisors than through those whose ties with management are more distant. So it would not be inconsistent for the Company to know of Estrumse's pro-Union biases and still make no objection to his voting.[5] All in all we cannot say that

---

3. The Company greatly belabors the fact that the Board based its decision on the Company's awareness both of Estrumse's union sympathy *and* of rumors that he was engaged in campaigning. The Company proceeds on the basis that if it can show substantial evidence to contradict either of these points, then the Board's no hearing decision must fall. But this a misconstruction of what information the Board is seeking. The Board is looking simply for Company knowledge of Estrumse's activities. If the Company knew that the supervisor had pro-Union sympathies, it would have more cause to wonder about the rumors it heard. Conversely if the Company had heard rumors about his electioneering activities, it might pause to explore his sympathies. Thus rumors of activities and knowledge of sympathies are not the diseases for which the Board

is searching but only the symptoms. They are the two factors the Board considered in deciding that the Company had implicitly supported the supervisor.

4. This adds more fuel to the notion that the employer was treating this as a "sleeper". Estrumse was, as claimed, a supervisor (see note 2, supra). He was, to employer's knowledge, ineligible to vote.

5. The night before the election Estrumse told the management that he had been asked to serve as a Union observer in the election. Respondent may be correct in his assertion that knowledge of pro-Union sympathies obtained this late in the campaign cannot be held against the Company in determining its knowledge of the supervisor's activity. Yet, the next day Estrumse informed the Company that he had

the Company has presented evidence sufficient to meet the burden required for a hearing.

■ The Company also contends that a hearing should be held in the unfair labor practice proceeding. Yet here the Company presented no new evidence or issues which it had not contended before in the representation proceeding. Therefore, the representation and unfair labor practice proceedings "are really one" and if a hearing is not required in a representation proceeding it certainly cannot be required in unfair labor practice proceeding where the issues are the same. Pittsburg Plate Glass Co. v. NLRB, 1941, 313 U.S. 146, 158, 61 S.Ct. 908, 85 L.Ed. 1251, 1261; NLRB v. Crest Leather Manufacturing Corp., 1969, 5 Cir., 414 F.2d 421, 423. The Company cannot get two tries in a litigation when but one is warranted. Therefore the summary judgment given in the § 8(a) (5) unfair labor practice proceeding was proper.

Enforced.

decided not to be an observer, and the Company relies on this to show why any of its suspicions about the supervisor should thereby be diluted. But if information obtained the night before is irrelevant it seems to follow that information gained the next day is equally irrelevant.