**TURNER'S EXPRESS, INCORPORATED, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 71–1760.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 9, 1972.

Decided March 14, 1972.

James A. Harper, Jr., Richmond, Va. (Hill B. Wellford, Jr., and Hunton, Williams, Gay & Gibson, Richmond, Va., on brief), for petitioner.

Arthur L. Fox, II, Atty., N. L. R. B. (Peter G. Nash, Gen. Counsel; Marcel Mallet-Prevost, Asst. Gen. Counsel, and Abigail Cooley Baskir, Atty., N. L. R. B., on brief), for respondent.

Before CRAVEN and RUSSELL, Circuit Judges, and CHAPMAN, District Judge.

CHAPMAN, District Judge.

The employer, Turner's Express, Inc., has petitioned this Court to review and set aside the Decision and Order of the Board issued August 10, 1971, in Case No. 5–CA–5155, reported in 192 N.L.R. B. No. 89. The Board has cross-petitioned for enforcement of its Decision and Order.

The basic issue involves the conduct of two of employer's supervisory personnel, who supported the Union in the election of August 6 and 7, 1969, and whether their actions denied the employees a free and uncoerced opportunity to select a collective bargaining agent. We find that the actions of these two supervisors was such as would tend to coerce employees working under their direction, and the Decision and Order of the Board must be reversed and the Board's cross-complaint for enforcement denied.

The employer is a motor carrier with ICC authority to transport freight in the area from Norfolk, Virginia to New York City. It employs approximately 25 "over the road" drivers, 18 local drivers, (who also load and unload freight) and 8 to 10 men in its shop force. The shop foreman was Garland Tebo and the warehouse foreman was E. W. Robbins. Both of these men were "supervisors" within the meaning of the Act and their advocacy of the Union cause was quite strong and unknown to the employer. The record does not support the Board's finding that they were only "minor supervisors" whose opportunities to affect the employment status of regular employees was so limited that their actions would not undermine the "laboratory conditions" [1] that should surround an election.

Robbins directly supervised the 18 warehousemen and local drivers. He directed loading and unloading and the routing, breaking and sending out of local deliveries. He also checked all shortages and damages to freight. From 4:00 a. m. until 8:00 a. m. each day Robbins served as supervisor of the entire terminal in addition to his regular du-

---

1. N.L.R.B. v. Decatur Transfer and Storage, Inc., 430 F.2d 763 (5th Cir. 1970) at page 764.

ties as warehouse supervisor. He had authority to hire temporary employees and set their wages, and recommend them for permanent employment. He also recommended employees for wage increases and as he testified: "I would go to the head office, recommend a raise for the boys and they usually got it. I was very seldom turned down." He had the power to recommend discharge or other disciplinary proceedings against employees and to grant employees time off.

Tebo, as shop foreman, was supervisor over 8 to 10 mechanics, helpers, lubrication and tire men. He was responsible for the maintenance of trucks and the buying of all fuel and repair parts. He recommended hiring and firing, wage increases and could impose certain discipline as well as assign overtime to the men under him.

Robbins and Tebo were supervisors of approximately fifty percent of the employees in the bargaining unit. In the election 32 employees voted for the Union and 22 voted against, with 6 votes challenged and not counted for either side. It is obvious that if the supervisors influenced only 5 or 6 votes in favor of the Union, these votes could change the result of the election.

 The Board's designation of Robbins and Tebo as "minor supervisors" is not supported by the evidence or the law.[2] The Act does not grade supervisors as major or minor. An individual is either a supervisor or an employee. In discussing the position of supervisors and their opportunity to coerce employees over whom they have authority, this Court clearly explained the problem in N. L. R. B. v. Heck's, Inc., 386 F.2d 317 (4th Cir. 1967):

"Such day to day authority over employees provided a basis for potential tyranny when improperly exercised by a supervisor thwarted in his aim to obtain union recognition, and an employee properly could doubt his ability to obtain protection by appeals to higher company authority. Employees who were subject to having their daily work schedules and days off assigned by such supervisors, and who were aware that department heads occupied a more exalted status than the employees, could, thus, well be influenced in their determination to sign a union authorization, irrespective of their knowledge of their employer's attitude toward the union, when requested to do so at meetings sponsored by their supervisors. We can only conclude on this record that the participation of the supervisors was sufficient to taint the drive for unionization and that, therefore, absent other proof of the voluntariness of each of the 20 authorizations, the record fails to disclose that the union represented the free and untrammeled choice of the majority of the employees comprising the unit. Whether the employees thought of the department heads as 'supervisors' is irrelevant, because they surely knew who assigned them their daily work loads and who granted them days off."

 The law is clear that supervisory pressure upon employees in the selection of a bargaining representative is coercive. It is not necessary that it be proved that such pressure and coercion affected the result of the voting. In N. L. R. B. v. Metropolitan Life Insurance Co., 405 F.2d 1169 (2nd Cir. 1968) certain supervisors were erroneously in-

2. 29 U.S.C.A. 152(11) "The term 'supervisors' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, layoff, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

cluded in the bargaining unit. The Court stated:

"Accordingly, since it is not known to what extent, if any, the watch engineers and the assistant air conditioning engineers engaged in pro-union activities and *perhaps* influenced the voting pattern of other employees, we cannot be sure that the 'laboratory conditions' the Board holds are essential to a valid election have not been disturbed." (Emphasis added)

In N. L. R. B. v. Roselon Southern, Inc., 382 F.2d 245 (6th Cir. 1967) the Court held that if a person alleged to be a supervisor performs any one of the functions set forth in the statutory definition, he meets the test, and it is not necessary that such person is required to regularly and routinely exercise such powers, but it is the existence of the power that determines his status as a supervisor. The employee in Roselon might be described by the present Board as a "minor supervisor", since she was an instructor responsible for assigning ten women to the machines they were to operate and giving them work assignments. She was also required to train new operators and give progress reports on the new operators to a supervisor. She patrolled the machines to see that they were operating properly and that yarn was coming from the machines in good order. She also had the authority to discipline employees by issuing warning slips. However, the Court found her to be a supervisor and her pre-election pro-union activity to be coercive on other employees so that the election was set aside.

The present record is replete with actions and statements of Tebo and Robbins in favor of the Union. It appears that they were largely responsible for bringing in the organizer to commence the Union effort. They interrogated employees as to whether they intended to sign Union authorization cards and advised some they would be "crazy" not to sign. They questioned others as to how they intended to vote, warned that if the employees voted against the Union things were going to get tough, and they would start "paying for it" after the election. Both supervisors told employees that they would get higher wages if they voted for the Union and that the Union would mean more money and benefits. Robbins advised certain employees "they should vote for the Union if they wanted protection". Tebo threatened a driver: "When the Union gets in, we are going to take care of you", and told others "if you don't vote for the Union, your tail ought to be kicked off the premises".

The Board argued that Tebo and Robbins thought they were in the bargaining unit and could vote in the election, and then attempted to justify or rationalize their conduct by referring to these remarks as having been made on an "employee to employee basis" rather than as a supervisor speaking to those under him. The facts do not support this position and neither does N. L. R. B. v. Heck's, supra. The employees knew the position, authority and attitude of Tebo and Robbins, and it is obvious that the supervisors were also quite aware of their status with the company.

The Board found that the activities of these supervisors were harmless because of the company's vigorous anti-union campaign and the employees knowledge of the president's strong opposition to unionization. This is also answered by Heck's, supra, 386 F.2d at page 322:

"It is no answer that the company's anti-union position was abundantly known to employees . . . . An employee properly could doubt his ability to obtain protection by appeals to higher company authority."

In industry an employee is more concerned about the attitude of his immediate supervisor than he is with the feelings of the company president. This is similar to the Army where a private is more concerned with the attitude of his corporal or sergeant than he is with the

colonel or general, since the corporal and sergeant control his day to day life.

The Decision and Order of the Board is hereby reversed and the Board's cross-complaint for enforcement is denied.

CRAVEN, Circuit Judge (dissenting):

I would accept as supported by substantial evidence the appraisal of the Board that the election environment was fair and uncoerced and would enforce the Board's order. If anyone were fearful of reprisal in this small company of some 53 employees, I should think it would have been the pro-union supervisors rather than the anti-union employees. As I suggested in my dissenting statement in N. L. R. B. v. Heck's Inc., 386 F.2d 317, 323 (4th Cir. 1967), it strains reality to suppose anti-union employees may have to submit to tyranny by "disloyal" supervisors—unable to catch the ear of a sympathetic and grateful management.