**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PIGGLY WIGGLY RED RIVER COMPANY, Inc., Respondent.**

**No. 71–1658.**

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1972.

Decided July 12, 1972.

David Miller, Atty., Peter G. Nash, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Thomas E. Silfen, Atty., N. L. R. B., for petitioner.

Hugh M. Smith, Allen P. Schoolfield, Jr., Schoolfield & Smith, Dallas, Tex., for respondent.

Before ROSS and STEPHENSON, Circuit Judges, and DAVIES, Senior District Judge.*

STEPHENSON, Circuit Judge.

Piggly Wiggly (respondent) opposes enforcement of a bargaining order issued against it by the NLRB.[1] Piggly Wiggly claims that the Board's order was arbitrary, capricious and a denial of due process in that Piggly Wiggly's

---

* Sitting by special designation.

1. Respondent is engaged in business in the State of Arkansas. This Court has jurisdiction, therefore, under § 10(e) of the National Labor Relations Act.

post-election objections were passed on without Piggly Wiggly having been afforded an opportunity to present evidence or to confront witnesses in an evidentiary hearing.

On May 26, 1970, the meat department employees at three of respondent's stores voted 6 to 4 in favor of union [2] representation. At a pre-election conference the morning of the election, Piggly Wiggly informed the Board Agent that it had come to the Company's attention that the Union's organizational campaign "was instigated and at all times sponsored and promoted by a supervisory employee" and requested that the election not be held on that date. The request was denied but the ballot box was impounded and an administrative investigation conducted wherein it was concluded that (1) the Union's victory was untainted by the supervisor's involvement and, (2) Piggly Wiggly had known of the supervisor's conduct for three months preceding the election and without good cause failed to raise the matter until the election.[3]

Following announcement of the election results, Piggly Wiggly filed formal objections to the conduct of the election claiming that the Union's campaign had been initiated, prosecuted and dominated by one Rackley, a meat department supervisor, who used his supervisory capacity to intimidate and coerce other employees into joining the Union and to influence the election results. Piggly Wiggly further asserted that it had had no knowledge of Rackley's activities until one day prior to the election. Affidavits of employees substantiating the allegations concerning Rackley's conduct were submitted to the Regional Director.

Pursuant to 29 C.F.R. § 102.69(c) (1971) the Acting Regional Director caused an investigation of the objections to be made. Additional affidavits of employees and supervisory personnel were taken and the Director issued a Supplemental Decision denying respondent's objections and certified the Union's new representative status. The Board denied Piggly Wiggly's request for review on the basis that the request raised "no substantial issues warranting review." Subsequently, in an unfair labor practice proceedings, Piggly Wiggly defended its refusal to bargain with the Union on the grounds that the representation election had been tainted due to Rackley's activities and that it had been denied due process of law by the Regional Director in refusing to grant a hearing on the objections. The Board granted summary judgment on the basis that no newly discovered or previously unavailable evidence had been offered which would entitle Piggly Wiggly to relitigate issues already raised in the prior representation proceeding. The Board ordered respondent to bargain with the Union.

▇▇▇▇ Parties asserting objections following a representation election have a right to an adversary hearing only where substantial and material factual issues exist. 29 C.F.R. § 102.69(c) (1971). Otherwise, an administrative investigation conducted under the auspices of the regional director suffices. Objections entitling one to a hearing are those which set forth allegations which, if true, would likely require the setting aside of the election results on the basis that the improper conduct adversely affected the employee's free and uncontrolled choice in the election process. If this initial inquiry can be answered in the affirmative, then the remaining question is whether material factual issues are sufficiently present which can and should only be resolved by an adversary hearing rather than by *ex parte* administrative investigation. NLRB v.

2. Food Handlers Local 425 of the Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO.

3. This administrative investigation and its results are perfunctorily disclosed in a footnote to the Acting Regional Director's Supplemental Decision discussed *infra*. Nothing further concerning this initial "investigation" is set forth in the record.

Commercial Letter, Inc., 455 F.2d 109 (CA8 1972); NLRB v. Producers Cooperative Association, 457 F.2d 1121 (CA10 1972); NLRB v. Gooch Packing Company, 457 F.2d 361 (CA5 1972) and NLRB v. Lord Baltimore Press, Inc., 370 F.2d 397 (CA8 1966). It is not enough to merely question the inferences and interpretations placed upon the facts or the conclusions drawn from them by the regional director. The objecting party must with specificity produce evidence of certain conduct by particular persons in support of allegations "having a basis in law sufficient to overturn the election." NLRB v. Griffith Oldsmobile, Inc., 455 F.2d 867 (CA8 1972); NLRB v. Golden Age Beverage Company, 415 F.2d 26, 33 (CA5 1969); and NLRB v. Tennessee Packers, Inc., Frosty Morn Division, 379 F.2d 172 (CA6 1967).

■ It is clear that advocacy of the union by supervisors or supervisory pressure upon employees in a union campaign undermines the laboratory conditions that must prevail during an election and is cause for annulment of the election. Turner's Express, Inc. v. NLRB, 456 F.2d 289 (CA4 1972); NLRB v. Decatur Transfer & Storage, Inc., 430 F.2d 763 (CA5 1970); NLRB v. Roselon Southern, Inc., 382 F.2d 245 (CA6 1967) and NLRB v. Lamar Electric Membership Corp., 362 F.2d 505 (CA5 1966). Indeed, the Fourth Circuit has determined that where supervisory pressure is placed upon employees in the representation election process, it is not necessary that it be proved that such pressure and coercion affected the election results. Turner's Express, supra, 456 F.2d at 291. The company may not acquiesce in the supervisor's conduct, however, and then later take advantage of his wrongdoing by moving to set aside

the election. Decatur, supra, 430 F.2d at 764 and Lamar, supra, 362 F.2d at 507.

■ The Board urges that respondent did not make the necessary proffer of specific, non-conclusory evidence which prima facie would warrant setting aside the election. Piggly Wiggly presented to the Regional Director, along with its objections, affidavits of six employees. All stated that Rackley, a market manager at one of respondent's stores, had contacted them concerning the Union. Four stated Rackley had called them either at home or at work asking them to attend Union meetings and to vote for the Union in the election. Three observed Rackley in attendance at Union meetings giving pro-Union speeches. Three obtained Union authorization cards from Rackley. And one, while at lunch with two others and Rackley, stated that Rackley showed them a bargaining agreement of a competing grocery chain and said that they would get the salaries set out in that contract if the Union won the election. We think it is clear that Piggly Wiggly's post-election objections were sufficiently substantiated by the affidavits to warrant a hearing on the objections unless respondent had prior knowledge of and acquiesced in Rackley's improper conduct.[4]

The Acting Regional Director held in his Supplemental Decision that although Rackley had engaged in pro-union conduct, Piggy Wiggly acquired knowledge of Rackley's activities on February 21, 1970, failed to disavow such conduct, and then attempted to belatedly rely upon that conduct as grounds for setting aside the election. On February 21, 1970, the area market manager was sent to the store where Rackley worked at the direction of Piggly Wiggly's president in response to information the

---

4. The administrative investigation conducted by the Acting Regional Director involved the taking of affidavits from some of respondent's employees, Rackley, whom we were informed at oral arguments was later discharged for his pro-union conduct, and some management personnel. It is clear from the Supplemental Decision that some or several of the employees giving affidavits to the Board Agent made statements at variance with those previously given to Piggly Wiggly.

president had received from the store manager that some employees were making threats unless a certain wage increase was granted. The area market manager spoke to Rackley and another employee, advising them that a new wage pattern was being formulated and also to cease disturbing other employees. The president and the area market manager deny having been informed that a supervisor was participating in union activity at that time. The store manager, however, stated that he had heard employees talking to each other about Rackley's pro-union involvement, but also stated that he never informed higher management of this.

■ The Acting Regional Director concluded that "the above clearly shows the Employer's knowledge of the supervisor's involvement in the union campaign more than three months prior to the election." This conclusion is not supported by substantial evidence and the inferences needed to be drawn in order to reach such a conclusion are not founded in fact. The record is barren of any affirmative evidence that any higher echelon Piggly personnel were aware of Rackley's pro-union activities. What the record discloses is that on one day over three months previous to the election and prior to the filing of the petition for an election, management discovered that Rackley and another employee were sufficiently unhappy with their wages to complain about their plight to other employees. We cannot agree that the events, *as related in the record before us,* can form the basis for concluding that respondent was aware of Rackley's pro-union conduct. Even assuming these facts constituted knowledge by Piggly Wiggly of Rackley's pro-union conduct, the area market manager's instructions to Rackley to cease communicating his complaints to other employees certainly militates against the Acting Regional Director's finding that

"The Employer at no time admonished him to cease his activities on behalf of the Union."

Additionally, there is not substantial evidence, indeed, any evidence, to support the Acting Regional Director's conclusion that Piggly Wiggly's disavowal of Rackley's conduct on the day before the election to six of the ten eligible employees "served as an effective disclaimer of any Employer acquiescence in or ratification of the supervisor's union activity."

■ We think it is clear from the record before us that substantial and material factual issues exist which due process of law requires be resolved by a hearing before the objecting party's rights can be affected by an enforcement order. As this Court recently stated in *Commercial Letter, supra,* 455 F. 2d at 114:

Due process demands that the right to a hearing on an unfair labor practice, granted by the National Labor Relations Act, not be circumvented by the ex parte investigatory proceedings established in the Board regulations for the certification proceedings. * * * At some point in the administrative process the employer is entitled to have an opportunity to present the evidence upon which he relies and to question the evidence upon which the Board relies, and to submit this evidence for consideration by the Board and by this court in proceedings to enforce or set aside the Board's order. See NLRB v. Addison Shoe Corp., 450 F.2d 115 (8th Cir. 1971).

Here the disputed facts were resolved without the cleansing rigors of cross-examination and without the procedural safeguards of a hearing. See Lamar, *supra,* 362 F.2d at 508. Consequently, we refuse to enforce the Board's order.[5]

5. Piggly Wiggly's additional contention that the unit determination was inappropriate is without merit and was not pressed on this appeal.

The cause is remanded to the Board for a hearing on the issues. Enforcement is denied.[6]

---

6. The Fifth Circuit recently stated that "The closeness of the election is obviously relevant. Conduct which could have affected only a few voters may not have any effect on the outcome of the election in cases where the vote disparity is large, but the same conduct in a close election could be determinative." NLRB v. Gooch Packing Co., 457 F.2d 361, 362 (CA5 1972).

Here, the Union won the election by a 6 to 4 vote. Rackley's conduct, to be successful, need have influenced only one employee.