292 F.2d 627
 NATIONAL LABOR RELATIONS BOARD, Petitioner
v.
EMPLOYING BRICKLAYERS' ASSOCIATION OF DELAWARE VALLEY AND
VICINITY; Frommeyer& Co.; Jack Casper & Co.; Swartz &
Funston, Inc.; Jack Kelly, Inc.; Alex Guerrina & Sons; John
Compagna Co.; Anastasi Bros. Corp.; Joseph Liberati, Respondents.
 No. 13427.
 United States Court of Appeals Third Circuit.
 Argued March 23, 1961.
Decided June 19, 1961.
 
 Abraham A. Dash, Washington, D.C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Rosanna A. Blake, Atty., National Labor Relations Board, Washington, D.C., on the brief), for petitioner.
 Geoffrey J. Cunniff, Philadelphia, Pa., for respondents.
 Before KALODNER, STALEY and HASTIE, Circuit Judges.
 KALODNER, Circuit Judge.
 
 
 1
 This is a petition of the National Labor Relations Board pursuant to Section 10(e) of the National Labor Relations Act, as amended, to enforce its Order issued against the respondents in proceedings under Section 8(a) of the Act.[1]
 
 
 2
 The first named respondent, Employing Bricklayers' Association of Delaware Valley and Vicinity ('Association') is an association consisting of various masonry contractors in the metropolitan Philadelphia area. One of Association's principal purposes is to bargain collectively, via a committee, with various labor unions representing the employees of its constituent members. The remaining respondents are masonry contractors in the Philadelphia area. With the exception of Joseph Liberati they are all members of Association.
 
 
 3
 Local No. 1, Bricklayers' International ('Union'), is the bargaining representative of the respondent bricklayers' employees.
 
 
 4
 On January 10, 1959, Union held an election of officers, including president, vice-president, business representative, and members of the conference or bargaining committee and the grievance committee. Officers and supervisory employees of the respondent employers, who were dues-paying members in good standing of Union, and had participated in its affairs, voted at the January 10th election. As a result of their doing so, a series of charges were filed with the Board. Following an investigation the Board issued its complaint and conducted a hearing before a Trial Examiner who found that the record did not sustain a finding of a statutory violation and recommended that the complaint be dismissed. The Board, on review, found that the respondents had interfered with the administration of Union within the meaning of Section 8(a)(2) and (1) of the Act, and issued a Cease and Desist Order to the respondent, which provided in part as follows:
 
 
 5
 '1. Cease and desist:
 
 
 6
 '(a) From interfering with the administration of Local 1, Bricklayers, Masons and Plasterers' International Union of America, AFLCIO by participating through their officers, owners and management representatives in voting at union elections of officers and members of its various committees, or by participating otherwise in internal administration of the said labor organization.'
 
 
 7
 On this petition for enforcement of its Order the Board urges that it properly found that respondents violated Section 8(a)(2) and (1) of the Act by participating in the election of union officers and bargaining representatives.
 
 
 8
 Able counsel for the respondents here concedes that the Board's Order 'is proper to the extent that it prohibits supervisors from voting at union elections where members of the bargaining committee, or the grievance committee, or business representative are to be chosen', but vigorously contends 'that the Board's Order should not prohibit members of the union in good standing from voting for officers and members of committees, and otherwise participating in the internal administration of Local 1, where the voting and participation does not pertain to the collective bargaining process, or to the wages, hours and working conditions of the union's members.'
 
 
 9
 In making this contention, respondents' counsel urges that the record does not offer 'the slightest intimation that the affairs of the Local were administered other than for the good of the membership', and that there is no contention by the Board 'that the conduct of these employer representatives in voting actually produced an adverse effect.'
 
 
 10
 In graphic summation of the 'sweep' of the Board's Order, respondents' counsel says:
 
 
 11
 'Basically, the Board employs in this case a meat-ax approach where a scalpel is indicated. Such a broad, sweeping Order as the Board issued here is necessitated only where a drastic remedy is needed to rectify evil or unhealthy situations. * * * In this case, there is not a single line of testimony in the entire record which permits the slightest inference of improper conduct.'
 
 
 12
 The contentions stated bring into sharp focus the critical issue as to the extent to which rights of union members may be limited by the Board, viz., disenfranchisement, in effectuating the 'clear legislative policy to free the collective bargaining process from all taint of an employer's compulsion, domination, or influence.' International Ass'n of Machinists, etc. v. NLRB, 1940, 311 U.S. 72, 80, 61 S.Ct. 83, 88, 85 L.Ed. 50.
 
 
 13
 It must be said at this point that the Board in its Decision and Order noted that 'The General Counsel does not contend that the Union is an employer dominated or assisted labor organization, or that it is not the majority representative of the employees concerned', and that it further stated:
 
 
 14
 'There is, furthermore, no evidence that in the January 10 election the Respondents were attempting to assist the election of one rather than another slate of candidates for the Union offices, or that they participated in the election as an employer group rather than as individuals, members of the Union of long standing.'
 
 
 15
 The Board premised its holding in the instant case on its decision in Nassau & Suffolk Contractors' Ass'n, Inc., 118 N.L.R.B. 174, 183-184 (1957), which enunciated the rule, now known as the Nassau doctrine, that the mere act of voting in a union election by imployer officers and supervisory employees constitutes a form of 'interference' with the administration of the union in violation of the Act.
 
 
 16
 The Court of Appeals for the District of Columbia Circuit, in Local 636 of Journeymen and Apprentices of Plumbing & Pipe Fitting Industry, etc. v. NLRB, 109 U.S.App.D.C. 315, 287 F.2d 354, decided January 19, 1961, has subscribed to the Nassau doctrine. In doing so, after pointing out that Section 8(a)(1) and (2) of the Act define as unfair labor practices (1) employer interference with the exercise of rights guaranteed by Section 7 of the Act (the right to organize and bargain collectively), and (2) employer interference with or domination of the administration of a labor organization, expressly hald that 'active participation in union affairs by supervisors' is an 'interference' in violation of the Act. 287 F.2d at page 361.
 
 
 17
 We are in accord with the Nassau doctrine and the specific holding in Local 636, supra, that a member of a union '* * * has no statutorily protected right to participate actively in that union', and that '* * * the Board can determine the extent of participation to be permitted in an individual case.' 287 F.2d at page 362.
 
 
 18
 As we said in NLRB v. Griswold Mfg. Co., 3 Cir., 1939, 106 F.2d 713, at pages 721, 722:
 
 
 19
 'The National Labor Relations Act was designed to protect the basic rights of labor incidental to the practice of collective bargaining.
 
 
 20
 'Section 8 of the National Labor Relations Act * * * must not be construed so strictly or so legalistically so as to destroy its purpose or the legislative intent.
 
 
 21
 'The prohibition against the socalled company union and its domination by the employer is designed to prevent the rights of employees from being nullified by an organization which is responsive to the will and the purpose of the employer.
 
 
 22
 '* * * Our National and State legislatures have recognized that in a measure labor must be protected against itself; that safeguards must be erected which will prevent the employer from disadvantageously bargaining with his employees.'
 
 
 23
 The contention of the respondents here that the Board's Order must be modified so as to permit 'members of the union in good standing' to exercise their inherent right to select the proper people (officers) to administer the internal affairs of their union * * * which are completely unrelated to the collective bargaining process', does not take into account the 'facts of life' relationship between policies relating to the bargaining process formulated by such officers and their critical impact on the members of the union bargaining committee in the performance of their functions.
 
 
 24
 It is clear that the Board properly concluded in the instant case that respondents interfered with the internal administration of the affairs of the Union by participating in the selection of union officers and bargaining representatives and that its Order should be enforced.
 
 
 25
 Accordingly, a decree enforcing the Board's Order will be entered.
 
 
 
 [1]
 61 Stat. 136, 65 Stat. 601, 72 Stat. 945, 29 U.S.C.A. 151 et seq. The Board's decision and order are reported at 127 NLRB No. 28 (1960)