The **POWERS REGULATOR COMPANY**, an Illinois corporation, Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD**, Respondent.

**POWERS EMPLOYEES SHOP UNION**, Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD**, Respondent.

Nos. 14973, 15104.

United States Court of Appeals Seventh Circuit.

Jan. 5, 1966.

Rehearing Denied March 1, 1966.

Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Henry E. Seyfarth, John T. Weise, Chicago, Ill., Attorneys for Petitioner. Walter P. Loomis, Jr., John F. Cusack, Chicago, Ill., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Martin R. Ganzglass, Attorney, N. L. R. B., Washington, D. C., Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Melvin Pollack, Attorney, N. L. R. B., for respondent.

Before HASTINGS, Chief Judge, SCHNACKENBERG, Circuit Judge, and GRUBB, District Judge.

SCHNACKENBERG, Circuit Judge.

Petitioners, The Powers Regulator Company, an Illinois corporation, herein called "petitioner" or "Company", and Powers Employees Shop Union, herein called "PESU", seek review of an order of the National Labor Relations Board, herein called "Board", entered in proceedings on a charge filed with the Board by United Steelworkers of America, AFL-CIO and the Industrial Union Department, AFL-CIO, herein called "Steelworkers".

It is undisputed that 1963 marked the date of expiration for a collective bargaining agreement between the Company and PESU, one of a series commencing in 1949.

The charge alleged that the Company interfered with the administration of and contributed support to PESU, in violation of section 8(a) (2) of the National Labor Relations Act as amended, hereinafter called "the Act", 29 U.S.C.A. § 158 (a) (2). It also alleged violations of section 8(a) (1) through interference with and restraint of employees in the exercise of rights guaranteed by section 7. The general counsel of the Board issued a complaint and an amendment, charging a violation of section 8(a) (3) of the Act.

Following a hearing, the trial examiner issued a decision in which he found certain acts and statements of Anthony Liga and James H. Crom, Jr., employees hereinafter called Liga and Crom, to be violations of section 8(a) (1), but dismissed the complaint as to the alleged violations of section 8(a) (2) and (3).

Exceptions and cross-exceptions were filed. On November 30, 1964, the Board issued its decision and order, which adopted the trial examiner's findings, conclusions and recommendations, with certain additions and modifications. More specifically, the Board affirmed the findings that the Company had violated section 8(a) (1), but also found, contrary to the trial examiner, that the Company had violated section 8(a) (2), and affirmed the finding that the Company had not violated section 8(a) (3).

The Board ordered the Company to cease and desist from (1) interrogating employees concerning union membership and activities, and creating an impression of surveillance, (2) threatening employees with a plant shutdown, (3) interfering with the administration of PESU by conducting collective bargaining negotiations with any committee representing PESU "which includes in its membership Chester Bogucki [an employee hereinafter called Bogucki] or any other supervisor within the meaning of section 2(11) of the Act", (4) recognizing PESU as exclusive bargaining agent of its employees until it had been certified by the Board, (5) maintaining or giving effect to any agreement with PESU, exclusive of a proviso immaterial here, unless and until it had been certified by the Board, (6) or in any other manner interfering with, restraining or coercing the Company's employees in the exercise of the right to engage in union activity. The Board also ordered the Company to withdraw and withhold all recognition from PESU unless and until it is certified by the Board as the exclusive representative of the Company's employees.

The Company and PESU each petitioned this court to review and set aside the order of the Board and the latter filed

its answer and cross-petition for enforcement.

As to PESU, the Board's complaint charged that Liga was a supervisor within the meaning of section 2(11) of the Act and that the Company interfered in the administration of, and thereby unlawfully assisted PESU, in part, as follows:

1. Permitted PESU to conduct balloting on the premises as to the most recent collective bargaining proposal, which cut off employee discussion of it.

2. Company premises and equipment were used to print PESU recommendations to ratify the contract.

3. Bogucki assisted in aborting and defeating a Company employee's motion that PESU affiliate with the Steelworkers.

PESU answered the complaint as amended by denying that Bogucki and Liga were Company agents and supervisors under section 2(11) of the Act, and pleaded in its answer to the original complaint that the Board 15 years before had in case No. 13 RC 570 found that the title "supervisor" for employees doing the same work as Bogucki and Liga made such "supervisors" eligible to participate in a Board election on June 2, 1949 because they were "properly part of a production and maintenance unit".

The answer of PESU also denied Company interference and assistance with its administration. It averred that the Board, 15 years previously had found that Bogucki was eligible to be a member of PESU and pleaded the free election of Bogucki to the Bargaining Committee by secret ballot of the members, independently of the Company, as well as his election to the executive board by secret ballot; alleged that the mimeographing services of the Company were paid for by PESU at the prevailing commercial rates in the area; set up that, in the PESU meeting of September 11, 1963, Bogucki effectively fought "a wild attempt to force the members of this union [PESU] into a labor organization" not of their own choosing; and stated that the Company had never interfered with PESU and that the Steelworkers were trying a gambit through the Board, when all other proper avenues of employee selection open to them had failed.

■ 1. It is apparent that PESU was established and operating as a union of employees at the Powers plant and that, in August 1963, the Steelworkers commenced their attempt to form a new union there. The evidence shows that management, aided by President Mueller, was opposed to the entry of the Steelworkers, who continued their organizational drive. It is obvious that Mueller's opposition was communicated to the employees through various plant subordinates, such as supervisors and foremen. We hold that this conduct by such employees as Liga and Crom, occurring at a time when Steelworkers were conducting an organizing campaign among the employees, affords a basis for the Board's determination that § 8(a) (2) was violated.

■■ 2. This section was also violated by the Company's bargaining with PESU's negotiating committee, which included Bogucki, in the light of the adage that an employer may not sit on both sides of the bargaining table. In thus implicitly characterizing Bogucki as a supervisor, we have in mind that the evidence shows that both he and Liga exercised supervisory power within the meaning of § 2(11) of the Act in that they recommended pay increases and had the responsibility of directing the work in their departments, where they acted on their appraisal of the skills and experience of the employees, recording the judgment on a detailed appraisal form.

We hold that the Board was justified in finding that the Company by coercive conduct, not only assisted PESU in organizing its employees against the Steelworkers, but interfered with its employees' rights under § 7 of the Act and thus violated § 8(a) (1).

■ 3. We hold that there is substantial evidence in the record considered as a whole which supports the Board's

findings and we further find that the Board's order is reasonable and proper.

■■■ As we said in Harrison Sheet Steel Co. v. National Labor Relations Board, 194 F.2d 407 (1952), at 410:

"It has repeatedly been held that an employer may not intrude in matters concerning the self-organization of his employees. He must refrain from all interference. He must maintain a strictly neutral attitude. Especially is this so where the adherence of the employees is being sought by rival labor organizations. * * *

* * * * * *

"* * * we may not reject inferences drawn by the Board from proven facts merely because different inferences might seem to us more reasonable. And we must observe the rule that the requirement for canvassing the whole record does not mean that we may displace the Board's choice between two fairly conflicting views, even though we might justifiably have made a different choice had we been the trier of the facts. * * *"

In International Ass'n of Machinists, etc. v. National Labor Relations Board, 311 U.S. 72 (1940), at 78, 61 S.Ct. 83, at 88, 85 L.Ed. 50 the court said:

"* * * Slight suggestions as to the employer's choice between unions may have telling effect among men who know the consequences of incurring that employer's strong displeasure. The freedom of activity permitted one group and the close surveillance given another may be more powerful support for the former than campaign utterances."

President Mueller's declaration, as made known to the employees by Liga just prior to their vote on the proposed contract, that before he would let the Steelworkers in, he would close the factory, undoubtedly had a substantial impact. The fact that Liga said that Mueller had expressed this view was established by the testimony of Elvester Gadison, who worked in Department F where Foreman Crom had introduced Liga as Gadison's supervisor, in March 1963. As was said in Bausch & Lomb Optical Co. v. National Labor Relations Board, 2 Cir., 217 F.2d 575 (1954), at 576:

"* * * These incidents cannot be dismissed as de minimis, as the company contends, since any expressions of company attitudes, even to small groups of individuals, were likely to be rapidly disseminated around a plant during the struggle of organization.

* * * * * *

"* * * The Board could reasonably deduce from all these facts the existence of an 'aroma of coercion' which interfered with the employees' rights to choose their own bargaining representative. * * *"

For these reasons the petitions for review are denied and a decree will be entered enforcing the Board's order.

Order enforced.