**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**NORTH ARKANSAS ELECTRIC COOP-ERATIVE, INC., Respondent.**

**No. 19437.**

United States Court of Appeals
Eighth Circuit.

June 17, 1969.

Charles R. Both, Atty., N.L.R.B., Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Richard S. Rodin and William J. Avrutis, Attys., N.L.R.B., filed brief for petitioner.

Gaines N. Houston, Little Rock, Ark., for respondent and filed brief.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The National Labor Relations Board seeks enforcement of its order requiring reinstatement of a North Arkansas Electric Cooperative, Inc., employee. The Board adopted the findings and conclusion of the Trial Examiner who had found that North Arkansas had violated §§ 8(a) (1) and (3) of the National Labor Relations Act by discharging an employee, Jack Lenox. North Arkansas admits that it discharged Lenox because of his failure to remain "neutral" during a union organizational campaign,[1] but contends that since Lenox was a "managerial employee," the discharge was not violative of the Act. The sole issue on this appeal is whether the Board's conclusion that Lenox was not a "managerial employee" can be sustained. We hold that it cannot. We leave open the question of whether an employer has a right to discharge a "managerial employee" for expressing favorable opinions of a union during the course of a representation election. We remand that issue to the Board for its determination.[2]

The term "managerial employee" is not used in the National Labor Relations Act, nor is provision made in the Act for the inclusion or exclusion of such employees in bargaining units. The Act is silent as to whether this type of employee is entitled to the protection of the Act for union activities or membership.[3]

---

1. The testimony is clear that Lenox was instructed by representatives of management that he should stay "neutral" during the International Brotherhood of Electrical Workers, AFL–CIO (IBEW) organizational campaign. Lenox testified that notwithstanding these instructions, he attended a meeting at which the Union was discussed. At this meeting, Lenox made the following statements about the IBEW:

   "I responded by saying that I was sure that all of the people in the room knew that I carried an IBEW card; that in the past while working on union jobs I had a vacation when I wanted it. It is true that I paid dues and assessments, but the money I made, made it well worth it, and I also pointed out that I did not quit the union job to move to Arkansas because I was unhappy with the union. It was simply because I was not satisfied with where I was living, and I wanted to live here."

2. The Trial Examiner found that if Lenox was deemed to be a "managerial employee," his discharge would not be unlawful in that "managerial employees" are not covered by the Act. The Board, in affirming the Trial Examiner's finding that Lenox was not a "managerial employee," expressly reserved the question of whether the Act protected "managerial employees." We express no opinion but note that the concerted activities were primarily expressions of opinion.

3. The Act does exclude "supervisors" from the coverage of the Act. A "supervisor" is defined as "any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." 29 U.S.C. § 152(11). Neither of the parties contend that Lenox comes within this definition.

The Board, however, has long followed the practice of excluding employees, designated as "managerial," from bargaining units in representation elections.[4] It does so on the premise that certain non-supervisory employees are so closely allied with management that they should be excluded from employee bargaining units. The right to exclude "managerial employees" from bargaining units has been recognized by the Courts. See, Continental Insurance Co. v. N.L.R.B., 409 F.2d 727 (2d Cir. 1969), 70 L.R.R. M. 3407; Retail Clerks International Ass'n v. N.L.R.B., 366 F.2d 642 (D.C. Cir. 1966); International Ladies' Garment Workers' Union v. N.L.R.B., 339 F.2d 116 (2d Cir. 1964).

The Board expanded its definition of "managerial employees" in Ford Motor Company, 66 N.L.R.B. No. 1317, 17 L.R. R.M. 394 (1946). In discussing whether time study employees of an automobile manufacturing company should be excluded because their interest and duties were closely related to management, the Board stated:

"We have customarily excluded from bargaining units from rank-and-file workers, executive employees who are in position to formulate and effec-

tuate management policies. These employees we have considered and still deem managerial in that they express and make operative the decisions of management."

The Board held that the employees in question "could not be regarded as formulating, determining and effectuating managerial policies for they merely supply information which may be used by the employer in establishing labor relation policies."

The Board restated its definition of managerial employees in Eastern Camera & Photo Corp., 140 N.L.R.B. No. 58, 52 L.R.R.M. 1068 (1963). In holding that an assistant store manger was not a "managerial employee," the Board stated:

" 'The Board has defined managerial employees as those who formulate, determine and effectuate an Employer's policies. * * * [T]he determination of an employee's "managerial" status depends upon the extent of his discretion, although even the authority to exercise considerable discretion does not render an employee managerial where his decision must conform to the employer's established policy.' "
(Footnotes omitted.)
52 L.R.R.M. at 1069.

4. The cases involving the exclusion of non-supervisory employees from a bargaining unit as "managerial employees" are legion. Below are examples of the types of positions excluded: Bendix Aviation Corp., 47 N.L.R.B. No. 8, 11 L.R.R.M. 229 (1943)—Expediters who were charged with expediting orders and assuring adherence to production time schedules. J. L. Brandeis and Sons, 54 N.L.R.B. No. 880, 13 L.R.R.M. 230 (1944), enf., den'd in part, 145 F.2d 556 (8th Cir. 1944)—Assistant buyers who had the privilege of buying merchandise at lower costs, who earned approximately fifteen per cent more pay and who had authority to approve customer checks and discounts. General Telephone Company of Ohio, 112 N.L.R.B. No. 152, 36 L.R.R.M. 1178 (1955)—Local commercial representatives who dealt with the public, including handling their complaints. Also had authority to hire and discharge other commercial employees. Gulf States Telephone Co., 118 N.L.R.B. No. 141, 40 L.R.R.M. 1309 (1957)—Commercial representative cashiers who were in charge of various exchanges and who deal with the general public on all public problems. Rural Electric Company, Inc., 130 N.L.R.B. No. 799, 47 L.R.R.M. 1431 (1961), enf'd in part, 296 F.2d 523 (10th Cir. 1961)—Electrification advisor—The opinion does not detail the nature of his duties. ACF Industries, Inc., 145 N.L.R.B. No. 40, 54 L.R.R.M. 1393 (1963)—Field expediters who recommended whether a supplier should be accepted or rejected. Garden Island Publishing Co., 154 N.L.R.B. No. 60, 60 L.R.R.M. 1012 (1965)—Circulation department manager who billed all the circulation accounts and directed the work of the carriers. Fresno Auto Auction, Inc., 167 N.L.R.B. No. 124, 66 L. R.R.M. 1177 (1967)—Public relations man—The opinion does not detail the nature of his duties.

The only extensive Court discussions as to the standard to be followed in determining whether an employee is a manager are found in Retail Clerks International Ass'n v. N.L.R.B., *supra*, and International Ladies' Garment Workers' Union v. N.L.R.B., *supra*. Both cases involved the question of whether union business agents or organizers were "managerial employees" and, thus, are only helpful insofar as they discuss the problem generally. The Court said in *Retail Clerks*:

"The Board has not developed clear standards for determining [who] is a managerial employee; there seem, however, to be two tests. The first is whether, even if they do not supervise other workers, their position with the employer presents a potential conflict of interest between the employer and the workers, * * *. * * *, *i.e.*, that the employee is closely related to or aligned with the management; such a determination, however, also seems to turn on the possibility of a conflict of interest arising, * * *.

"The Board also excludes * * *, as managerial employees, 'those who formulate, determine and effectuate an employer's policies,' * * *, and those who have discretion in the performance of their jobs, but not if the discretion must conform to an employer's established policy, * * *"

366 F.2d at 644–45.

The Trial Examiner found that Lenox was not a "managerial employee" because: (1) there was no evidence in the record that he exercised discretion in the performance of his duties; (2) the description covering the job he filled specifically provided that he was to work "within the limits of established policies, budget, legal requirements and authority delegated by the Manager;" (3) he did not exercise management prerogatives marking him as being allied with management; (4) his duties were not such as to present an area of potential conflict between the interest of the company and its employees. The Examiner added that a construction denying an individual the protection of the Act ought to be avoided unless compelled by the language of the statute, the legislative history of the Act or well-established precedent.

A determination by the Board that an individual is an employee within the meaning of the Act should be affirmed by this Court if it is warranted by the record and has a reasonable basis in law. See, N.L.R.B. v. United Ins. Co., 390 U.S. 254, 260, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968); N.L.R.B. v. Hearst Publications, 322 U.S. 111, 131, 64 S.Ct. 851, 88 L.Ed. 1170 (1944); Jas. E. Matthews & Co., v. N.L.R.B., 354 F. 2d 432, 435 (8th Cir.), cert. denied, 384 U.S. 1002, 86 S.Ct. 1924, 16 L.Ed.2d 1015 (1966). In our view, the determination that Lenox was not a "managerial employee" is neither warranted by the record nor supported in law.

Lenox was one of two electrification advisors employed by this rural electrification cooperative. He scheduled his own time and activities. He was treated as part of management as far as wages and benefits. He was paid on a monthly basis like other management personnel; he received no extra pay for overtime; and, he was carried on the insurance program of management. He actively participated with other management personnel in semi-annual meetings; the purpose of which was to plan new programs and secure new customers. He assisted in conducting employee training sessions.

Lenox served as a spokesman for the cooperative in the rural communities within the district in which he was stationed. He attended numerous meetings and made frequent speeches on behalf of it. He prepared and placed advertising material on the radio, in newspapers and other publications. While most of the prepared advertisements were of an institutional nature, Lenox not only determined when they would be placed but, on frequent occasions, designed the adver-

tising to meet competitive problems with other fuels. Compare, A. S. Abell Company, 81 N.L.R.B. No. 16, 23 L.R.R.M. 1298 (1949), where editorial writers in a large newspaper were deemed not to be "managerial employees."

Lenox was manager of the Arkansas Adequate Wiring Bureau, of which North Arkansas was a member. He inspected and certified wiring in homes or buildings. He determined whether the customers could qualify for all-electric rates and adjusted customer complaints.

■ Lenox was excluded from the bargaining unit at the time of the representation election by agreement between the company and the union. While neither the Board nor this Court are bound by the understanding between the parties, the fact that he was excluded is indicative of the view that was taken of his job by those in a position to closely observe what he did.

In summary, we believe that the record amply demonstrates that Lenox exercised discretion in the performance of his duties and that the nature of his responsibilities were such as to closely ally him with management.

■ We are also convinced, from a review of the decided cases, that had this issue been presented to the Board in the context of a representation election that the Board would have excluded Lenox as a "managerial employee." Fresno Auto Auction, Inc., 167 N.L.R.B. No. 124, 66 L.R.R.M. 1177 (1967); Gulf States Telephone Co., 118 N.L.R.B. No. 141, 40 L.R.R.M. 1309 (1957); General Telephone Company of Ohio, 112 N.L.R.B. No. 152, 36 L.R.R.M. 1178 (1955). It cannot, irrespective of the illegality or unfairness of the discharge, be permitted to reach a different result because the question is presented in the context of an unfair labor practice.

■ Reversed and remanded to the Board with specific instructions to it to determine whether or not the discharge of Lenox, as a "managerial employee" under all the circumstances of the case, was or was not violative of the Act.