**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL TYPOGRAPHICAL UNION, Respondent.**

No. 721–70.

United States Court of Appeals, Tenth Circuit.

Dec. 8, 1971.

Howard Hay, Los Angeles, Cal. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Frank H. Itkin and Lawrence H. Pelofsky, Attys., N. L. R. B., on the brief), for petitioner.

George B. Driesen, Washington, D. C. (Gerhard P. Van Arkel, Washington, D. C., and Jack D. Henderson, Denver, Colo., on the brief), for respondent.

Before MURRAH, BREITENSTEIN, and HOLLOWAY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This enforcement proceeding brought by the National Labor Relations Board under § 10(e) of the National Labor Relations Act, 29 U.S.C. § 160(e), presents some unusual problems. The respondent International Typographical Union is the international representative of a number of local labor organizations. The collective bargaining representative of its office employees at Colorado Springs, Colorado, is Local 64, Office and Professional Employees International Union. A series of incidents occurring in 1969 produced a number of unfair labor practice complaints against ITU. The Board found coercion in violation of § 8(a) (1), discriminatory discharges and demotion in violation of § 8(a) (3), and management participation in the affairs of Local 64 in violation of § 8(a) (2) and (1). The Board's decision and order are reported at 183 NLRB No. 60.

1. *Background.*

For about 15 years ITU and Local 64 were parties to collective bargaining agreements. Early in 1969, a substantial increase in work required the hiring of additional employees in the industrial pension section. Some of the employees became disgruntled and on March 22 a number met at the lunch hour to discuss their displeasure. Later that day, section supervisor Cloud called a meeting of those under her supervision and made statements which will be discussed later.

On March 24, some of the employees met with the business agent of Local 64 and on the next day signed grievance papers. Three days later, Cloud discharged two of those employees.

Negotiations for a new collective bargaining agreement began on March 17. On July 7, Local 64 went on strike. A collective bargaining agreement was reached ten days later. One employee who joined the picket line was discharged. Another who, during the bargaining negotiations, refused to sign a petition for removal of Local 64's busi-

ness agent had her salary reduced several months later.

During the period in question, ITU supervisors Wilmeth and Cloud were members of Local 64 and actively participated in its affairs.

### 2. *Supervisor Cloud's March 22 speech.*

Cloud told the assembled employees of her section that three unnamed sources had reported to her that employee Bruntzel had "contacted the Union" about work problems in the section. The Examiner held that the statement "did not create the impression of surveillance," and found that she "had not initiated any action of surveillance." The Board held that the manner of receipt of information is not determinative and that if an employer creates an impression in employees' minds "that he is keeping their union activities under surveillance, it is as intimidating and as coercive as surveillance itself." It concluded that Cloud's statement that she knew of the complaints created the impression of surveillance and hence violated § 8(a) (1).

Moore's Seafood Products, Inc., 152 NLRB 683, Hendrix Manufacturing Company v. National Labor Relations Board, 5 Cir., 321 F.2d 100, and like cases on which the Board relies, are not persuasive. They relate to initial union organization during which actual surveillance by the employer could be reasonably inferred. Here we have a long established bargaining relationship and no evidence of actual or attempted surveillance.

The first problem is the Board's finding that Cloud's statement violated § 8 (a) (1) "by creating the impression of surveillance." ITU argues that the Act does not prohibit creating an impression in the minds of the employees but, instead, prohibits certain conduct.

In National Labor Relations Board v. Walton Manufacturing Company, 5 Cir., 286 F.2d 16, 21, the court struck from an enforcement order a provision relating to "creating the impression of" surveillance. In Hendrix Manufacturing Company v. National Labor Relations Board, 5 Cir., 321 F.2d 100, 104–105, n. 7, the Fifth Circuit distinguished Walton because the record in Hendrix would support an inference of an attempt to make a surveillance. In National Labor Relations Board v. Simplex Time Recorder Company, 1 Cir., 401 F.2d 547, 549, the court said that creating an impression of surveillance "means wilful conduct and a justifiable impression." We agree with Simplex.

In the case at bar, the wilful conduct is the speech which supervisor Cloud made to members of her section. Reliance is had on the portion thereof relating to her knowledge of grievances. In any long established bargaining relationship grievances are common. They do not come out of the blue. It is reasonable to assume that the facts giving rise to a grievance, whether justified or not, are known to the parties before a formal grievance is filed. Nothing in the record suggests that the employees' activities were covert.[1]

The Board also found that Cloud's statement violated the Act by her reference to complaints made by employee Bruntzel during working hours and in telling employees that because of her complaints Bruntzel would not be promoted. The Examiner found, and the Board accepted his finding, that the complaints of Bruntzel were not made during working hours. Cloud was mistaken in her facts. We fail to find anything in her remarks which decries protected activities during non-working hours. Nothing in the record discloses to us any connection between her remarks and the

1. After its decision in this case, the Board decided Fifty Division, Hayes-Albion Corporation, 190 NLRB No. 18. There, as here, the union and the employer had a settled bargaining relationship and the charge was that a supervisor had threatened retaliation because of the filing of a grievance. The Board held that the supervisor's statement was, at the most, ambiguous and that in the context of the case the statements did not violate the Act.

concept of a threat of retaliation for engaging in protected activities. Cf. J. S. Dillon & Sons Stores Co. v. National Labor Relations Board, 10 Cir., 338 F.2d 395, 399. No other portion of Cloud's remarks was relied on by the Examiner or the Board in finding restraint and coercion.[2]

Because of the subtlety of problems presented by claims of restraint and coercion, we must rely heavily on the expertise of the Board. Our difficulty arises from the showing that after Cloud's remarks, grievance procedures were initiated by the employees. This action indicates that they were not in fact coerced or restrained from exercising their § 7 rights.

On the issues arising from supervisor Cloud's March 22 speech enforcement is denied and such issues are remanded to the Board for such action as it deems proper in the light of this opinion.

### 3. *Discharge of Nelson and Churchill.*

The Board held that ITU had violated § 8(a) (3) and (1) of the Act by discharging employees Nelson and Churchill for union activities, and entered the usual order of reinstatement and restitution. On review of the entire record we are convinced that the action of the Board is sustained by substantial evidence. Enforcement is granted on this phase of the case.

### 4. *Demotion of Frieda Clark.*

The Board held that the demotion of employee Frieda Clark violated § 8(a) (3) and (1). Here again it is enough to say that viewing the record as a whole substantial evidence sustains the Board's action. Enforcement is granted on this phase of the case.

### 5. *Discharge of Charles Scheible.*

The Board held that ITU had violated § 8(a) (3) and (1) by discharging employee Charles Scheible for union activities, and ordered that Scheible's estate be made whole for any loss which Scheible had sustained because of the discriminatory discharge.

Scheible was a salaried employee and was not covered by the union agreement. The Act does not protect supervisors in the assertion of § 7 rights. See § 14(a), 29 U.S.C. § 164(a) and Hanna Mining Co. v. District 2, Marine Engineers Beneficial Association, AFL-CIO, 382 U.S. 181, 188, 86 S.Ct. 327, 15 L.Ed.2d 254. Additionally, the Board has long recognized a category of "managerial" employees who are excluded from bargaining units. See National Labor Relations Board v. North Arkansas Electric Cooperative, Inc., 8 Cir., 412 F.2d 324, 326.

Scheible, an accountant, worked with another accountant named Martwick under chief accountant Wilmeth. Martwick was found to be a supervisor. The examiner's distinction between Martwick and Scheible does not persuade us. So far as the record shows, Martwick and Scheible were in the same category. Further, neither the Examiner nor the Board considered whether Scheible was a "managerial" employee.

In the circumstances we will not enforce the Board's order on this phase of the case and it is remanded for clarification and for determination of whether Scheible, if not a supervisor, was a "managerial" employee.

### 6. *Employer interference in the administration of Local 64.*

The Board held that ITU, by the conduct of supervisors Cloud and Wilmeth, had interfered with the administration of the Union (Local 64) in violation of § 8(a) (2) and (1) of the Act.

Cloud and Wilmeth were staff members and managerial level supervisors of ITU. They were also members of Local 64. They were not subject to the collective bargaining agreement between ITU and Local 64. They attended union

---

2. In a decison subsequent to this case, Paschall Truck Lines, 190 NLRB 108, the Board held that an employer's speech which warned of discharge for engaging in unprotected activities did not violate the Act.

meetings and participated (1) in an intraunion petition for the dismissal of a business agent, and (2) in the acceptance or rejection of ITU contract proposals.

Section 8(a) (2) provides that it is an unfair labor practice for an employer "to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it." Section 2(3), in defining "employee" excludes "any individual employed as a supervisor."

ITU argues that the Board found it guilty of not preventing its supervisors from exercising rights expressly conferred by § 14(a) of the Act and by the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a) (1), which provides:

> "Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."

The record discloses no pertinent rules and regulations in the constitution or bylaws of Local 64.

■ In our opinion the quoted provision of LMRDA does not change the meaning of the pertinent sections of the 1947 Act, e. g. §§ 2(3), 7, and 8(a) (2), but merely amplifies them. Local 636, etc., Plumbing & Pipe Fit. Ind. of United States v. National Labor Relations Board, 109 U.S.App.D.C. 315, 287 F.2d 354, 360.

In National Labor Relations Board v. Employing Bricklayers' Ass'n of Del. Val. & Vic., 3 Cir., 292 F.2d 627, 628–629, a case similar to the one at bar, the court upheld Board action that the employer interfered with internal administration of the union when supervisors participated in the selection of union officers and bargaining representatives.

In Local 636, supra, 287 F.2d at 361, the court said that active participation in union affairs by supervisors "was aptly characterized as 'interference' by the Board." The court also held that § 14 (a) does not guarantee to supervisors the right to participate actively in a journeymen's union. Ibid.

Interference must be determined "by careful scrutiny of all the factors, often subtle, which restrain the employees' choice and for which the employer may fairly be said to be responsible." International Association of Machinists v. National Labor Relations Board, 311 U. S. 72, 80, 61 S.Ct. 83, 88, 85 L.Ed. 50. The attendant difficulties are exemplified by Boyle's Famous Corned Beef Company v. National Labor Relations Board, 8 Cir., 400 F.2d 154, and Mon River Towing, Inc. v. National Labor Relations Board, 3 Cir., 421 F.2d 1, in the first of which a Board order based on interference was denied enforcement and in the second enforcement of a similar order was granted.

■ Our conclusions are: (1) there is no statutory right of a supervisor to participate actively in a journeymen's union; (2) whether the activities of supervisors are an impermissible interference must be determined on a case by case basis; (3) the Board is best able to judge if there is an interference, subtle or otherwise; (4) the Board reasonably held that there was interference with the free exercise of the employees' rights bcause of the nature of the supervisory positions and the participation by the supervisors in actions connected with the collective bargaining process; and (5) there is substantial evidence to support the Board's finding that the ITU was responsible for the actions of Cloud and Wilmeth. See Furr's, Inc. v. National Labor Relations Board, 10 Cir., 381 F.2d 562, 566–567, cert. denied, 389 U.S. 840, 88 S.Ct. 70, 19 L.Ed.2d 105.

One point remains. ITU insists that the Board order on interference infringes on the First Amendment rights of supervisors Cloud and Wilmeth. This is-

sue was not raised before the Board and we fail to see its pertinence. Cloud and Wilmeth are not before us claiming any deprivation of their constitutional rights. We are concerned with the Board order that the activities of Cloud and Wilmeth impermissibly interfered with the employees' rights. We are convinced that the record sustains the Board. Accordingly, the portion of the order based on interference will be enforced.

Those parts of the Board order relating to (1) the discharge of Nelson and Churchill, (2) the demotion of Frieda Clark, and (3) employer interference with the administration of Local 64 will be enforced. Enforcement is denied as to those parts of the Board order relating to (1) supervisor Cloud's March 22 speech, and (2) discharge of Charles Scheible. On the last two issues, the case is remanded to the Board for further consideration in the light of this opinion.