933 F.2d 568
 137 L.R.R.M. (BNA) 2466, 60 USLW 2016,
119 Lab.Cas. P 10,790
 NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
GENERAL STEEL ERECTORS, INCORPORATED, Respondent.
LOCAL UNION NO. 22, INTERNATIONAL ASSOCIATION OF BRIDGE,
STRUCTURAL AND ORNAMENTAL IRON WORKERS, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
 Nos. 90-1917, 90-2025.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 11, 1991.
Decided May 29, 1991.
 
 Frederick W. Dennerline, Fillenwarth, Dennerline, Groth & Baird, Indianapolis, Ind., for petitioner.
 Christopher W. Young, Aileen A. Armstrong, William M. Bernstein, N.L.R.B., Appellate Court, Enforcement Litigation, Washington, D.C., William T. Little, N.L.R.B., Indianapolis, Ind., for respondent.
 Sandra Rae Benson, Victor J. VanBourg, VanBourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., amicus curiae.
 Frederick W. Dennerline, Fillenwarth, Dennerline, Groth & Baird, Indianapolis, Ind., Frederick King, Sommer & Barnard, Indianapolis, Ind., for respondent.
 Before CUMMINGS, POSNER and FLAUM, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 This case requires us to choose between a per se rule and a case-by-case approach to unfair labor practices. We must decide whether a company has violated its legal duties to its employees by permitting one of its top employees simultaneously to hold positions as company superintendent and union president of Local Union No. 22, International Association of Bridge, Structural and Ornamental Iron Workers ("Local 22") that provides the workforce for the company. Specifically, the National Labor Relations Board has applied for enforcement of a February 7, 1990, order it issued against respondent General Steel Erectors, Incorporated ("Company") for engaging in unfair labor practice conduct in violation of Sections 8(a)(2) and (1) of the National Labor Relations Act (29 U.S.C. Sec. 158(a)(2) and (1)) ("NLRA").
 
 
 2
 The unfair labor practice at issue concerned the dual positions held by one Harry Fryar, who was both a superintendent at the Company and the president of Local 22. The Board's order required the Company to cease and desist from engaging in the unfair labor practice conduct by "taking whatever steps necessary to ensure that Harry L. Fryar, Jr., as long as he remains a supervisor for the [Company], shall not also serve in any of [five related] union positions [including president]." In addition the Board also ordered the Company to post an appropriate notice on the premises so that its employees would be aware that the Company had taken affirmative measures to overcome the unfair labor practice uncovered by the Board. Local 22, of which Fryar was president, has cross-petitioned for review. The International Union has itself filed an amicus curiae brief supporting its Local 22; however, the Company refrained from filing a brief, stating that it concurs fully in the views of Local 22. The Board's decision and order appear in 297 NLRB 116 (1990). For the reasons set forth below, we will enforce the Board's order.
 
 I. Background
 
 3
 The Company's principal place of business is in Indianapolis, Indiana. Since 1971 the Company and Local 22 have been parties to collective bargaining agreements covering the Company's iron worker employees. The last such contract disclosed in the record was effective from June 1, 1987, until May 31, 1990.
 
 
 4
 Harry Fryar has been the Company's superintendent since 1971 and is a supervisor within the meaning of the National Labor Relations Act. He reports directly to the Company's president and is responsible for the Company's day-to-day operation. Since 1987 Fryar has also served as president of Local 22. The Company's president, Sterling Phillips, knew of Fryar's dual positions. In addition to supervising a permanent staff of six Company workers, Fryar also bears responsibility for hiring temporary employees. When the need for additional help arises, Fryar requests dispatches from the Union.*
 
 
 5
 As president of Local 22, Fryar is the chief executive officer of Local 22 and holds various union positions. He is the chairman of the executive committee, Local 22's collective bargaining agent. In this position, Fryar is empowered to call meetings of Local 22's executive committee "to adjust all labor troubles" with respect to Local 22. The executive committee also decides whether to process a member's grievance against the Company. Additionally, as president of Local 22, Fryar may vote in the event of a deadlock in the executive committee.
 
 
 6
 On review, the Board found that the Company violated Sections 8(a)(1) and (2) of the National Labor Relations Act, 29 U.S.C. Sec. 158(a)(1) and (2), by permitting Fryar to serve as president of the Union and ex officio in other Local 22 positions. In relevant part, the statute provides:
 
 
 7
 (a) It shall be an unfair labor practice for an employer--
 
 
 8
 (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
 
 
 9
 (2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it: Provided, That subject to rules and regulations made and published by the Board pursuant to section 156 of this title, an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay;Consequently, the Board ordered the Company to ensure that Fryar, "as long as he remains a supervisor for the [Company], shall not also serve in any of the union positions" that might give rise to conflicts of interest. For example, Fryar's dual positions would place him in an awkward position in dealing with employee grievances. As both Local 22's president and Company supervisor, his loyalties cannot be undivided, especially in cases where an employee of the Company seeks to redress a grievance through the union. Under Section 14(a) of the Act (29 U.S.C. Sec. 164(a)), he is free to remain a Union member. Indeed he may even hold a Union position that is not somehow involved in the Union's collective bargaining relationship with the Company. Hoyt, Brumm & Link, Inc., 292 NLRB 111 (1989). The Board specified five related conflicting taboo positions and ordered that they be included in the general notice posted for the Company's employees. Thus in addition to president, Fryar may not serve as chairman of Local 22's executive board, chairman of its examining committee, trustee of the welfare fund, or trustee of the joint apprenticeship committee (App. 11).
 
 II. Analysis
 
 10
 In reviewing the Board's per se rule, we acknowledge the usual deference with which we approach its decisions. Discussing the standard of review appropriate to a decision by the Board, we have noted before that our review is "narrow," and that "where the problem requires the balancing of legitimate conflicting interests, the function of striking that balance to effectuate national labor policy, often a difficult and delicate responsibility, has been committed by Congress primarily to the Board, subject to limited judicial review." Local 1384, United Auto., Aerospace and Agricultural Workers of Am., 756 F.2d 482, 486 (7th Cir.1985), citing NLRB v. Truck Drivers Local 449, 353 U.S. 87, 96, 77 S.Ct. 643, 647, 1 L.Ed.2d 676.
 
 
 11
 Even though the National Labor Relations Act does not make it unlawful for supervisors to retain union membership, under the above-quoted statutory provisions unions are to be free from employer influence or involvement, so that an employer may not interfere in union affairs through the participation of a supervisor in employer-union relations. In Local 636, United Ass'n of Journeymen v. NLRB, 287 F.2d 354 (D.C.Cir.1961), a leading case upon which the Board relies, the D.C. Circuit reviewed a factually similar case in which a construction industry supervisor participated actively in union affairs with the knowledge of his employer. The court affirmed the Board's finding that the employer violated Sections 8(a)(1) and (2) and concluded that the Board need not show the existence of an actual agency relationship before an employer can be charged with union activities of its supervisory employees. Rather, the D.C. Circuit recognized a broader principle--namely, that such known participation by a supervisor in union affairs is properly characterized as interference that is actionable under the Act since it conflicts with the Act's clear policy to free the collective bargaining process from all taint of an employer's influence. Local 636, 287 F.2d at 361. See also Mon River Towing, Inc. v. NLRB, 421 F.2d 1, 8 (3d Cir.1969) (recognizing that the involvement of supervisory union members in union affairs conflicts with "the need to assure the complete devotion of union negotiating teams to employee interests"); NLRB v. International Typographical Union, 452 F.2d 976 (10th Cir.1971) (concluding that employer interfered with free exercise of employees' rights where supervisors interfered in collective bargaining process in violation of Section 8(a)(2)); Bausch & Lomb Optical Co. and United Optical & Instrument Workers of Am., Local 678, 108 NLRB 213 at 1555, 1559, 1561 (1954) (union that simultaneously represented employees of company and was business competitor of employer "drastically change[d] the climate at the bargaining table from one where there would be reasoned discussion in a background of balanced bargaining relations * * * to one in which, at best, intensified distrust of the [u]nion's motives would be engendered").
 
 
 12
 In Powers Regulator Co. v. NLRB, 355 F.2d 506 (7th Cir.1966), this Court considered whether the Powers Regulator Company violated Sections 8(a)(1) and (2) of the Act where two or three company supervisors organized the company's employees against the steel workers union in accordance with management's wishes. We ordered the Powers Regulator Company not to interfere with the administration of the Powers Employees Shop Union by conducting collective bargaining negotiations with any committee of that union whose membership included supervisors. These above decisions established the principle that employees are entitled to representation by individuals with undivided loyalty to their interests rather than by supervisors who, because of their dual roles, cannot set aside allegiance to their employers.
 
 
 13
 The Union argues on appeal that adoption of a per se rule in this case is inappropriate as such a rule would require the Board to find a violation of Sections 8(a)(1) and (2) even when there was no evidence at all of employer interference in collective bargaining. In the Union's view, it would be more appropriate to apply a case-by-case approach, requiring the Board to produce actual evidence of interference. A case-by-case approach would, in our view, impose more burdens than benefits and would serve to complicate the Board's regulatory functions.
 
 
 14
 The fact is that the consequences of divided loyalties may in many cases be subtle and hard to discern. Consequently, the Board has not only recognized violations of the Act in cases in which the interference has been palpable or pervasive (e.g., Powers Regulator Co., 355 F.2d at 506 (finding Section 8(a)(2) violation where defendant Company, through its supervisors and foremen, acted coercively to block formation of a new union)), but has not shied away from finding violations of the Act when employer involvement in union affairs effects an appearance of improper influence by management.
 
 
 15
 For example, in J.A. Jones Constr. Co. and Wagers and McLean, 284 NLRB 141 (1987), the Board found the mere fact that a foreman who was a high-level supervisor also occupied a position of responsibility with the union sufficed to establish a violation of Section 8(a)(2). In reaching this decision, the Board accepted the contention of the supervisor in Jones that he did not improperly bring his dual loyalties to bear on his decisions as a delegate to the union's national convention, or through his votes on the apprenticeship and employee benefits committees. However, despite the absence of evidence that he was discriminatorily influenced by his two positions, the Board required him to relinquish his union positions, because "employees [of Jones Construction] are entitled to representation that gives neither the appearance nor the actual practice of being influenced by management." 284 NLRB 141 at 1336.
 
 
 16
 A per se rule thus provides a workable, sensible approach to situations in which workers hold positions of power and influence with both the union and the employer. As the Board and courts of appeal have stated repeatedly, the mere appearance of divided loyalties must be avoided in union-employer dealings in order to comply with the requirements of Sections 8(a)(1) and (2). In an oft-quoted statement that expresses the point well, the NLRB in Nassau and Suffolk Contractors' Ass'n, 118 NLRB 174, 187 (1957) stated that:
 
 
 17
 Employees have the right to be represented in collective-bargaining negotiations by individuals who have a single-minded loyalty to their interests. Conversely, an employer is under a duty to refrain from any action which will interfere with that employee right and place him even in slight degree on both sides of the bargaining table.
 
 
 18
 (Emphasis in original).
 
 
 19
 In the case at hand, Fryar was an agent of the Company in his position as its superintendent and yet he participated in the Union's collective bargaining activities. The Company knew that he was the Union president. As such he was chairman of the executive committee that was the Union's collective bargaining agent. In that position, he participated in handling members' grievances and participated in the administration and expulsion of apprentices. Fryar's two positions place him squarely within the ambit of the Act's prohibition. Even though there may be no evidence that Fryar discharged his Union duties in order to benefit the Company, his dual allegiance presents the appearance of management's influence in Union affairs. In this situation, where Fryar negotiates on their behalf in collective bargaining and otherwise influences employer-employee relations, Union members would be entirely reasonable to question the extent to which his loyalty to their interests was "single-minded." Moreover, the effects of Fryar's twin positions on his fellow Union members might be manifested in ways that would be difficult to document or detect. For example, Fryar's colleagues might shy away from ever approaching him to state a grievance against the Company. Rather than confide in someone who might betray their interests, aggrieved employees might choose instead to remain silent, keeping their concerns to themselves. Fryar's dual positions would have a chilling effect on intraunion relations and would give rise to a perceived conflict of interest, but the conflict would remain unaccounted for by the Board in its efforts to determine whether the employer has actually interfered in the relations between the Company and its employees.
 
 
 20
 The amicus International Union argues that the Board's order conflicts with the Labor Management Reporting and Disclosure Act (29 U.S.C. Sec. 401 et seq.) ("LMRDA") by depriving Union members of their right to select individuals for Union office. However, that statute provides that it should not be construed to confer any rights, privileges, immunities, or defenses upon employers, or to impair or otherwise affect the rights of any person under the National Labor Relations Act (29 U.S.C. Sec. 523(b)), so that the latter statute is controlling here.
 
 
 21
 In a case specifically reviewing the tension between a union member's rights as guaranteed under the LMRDA and the employer's obligation not to interfere unfairly in the union under the NLRA, the Tenth Circuit determined that the former statute did not trump the latter; rather, the LMRDA simply "amplified" the NLRA. International Typographical Union, 452 F.2d at 976. Accordingly, where there is employer interference in violation of Section 8(a)(2) of the NLRA, a supervisory employee may not shield his actions by claiming the protection of the LMRDA. A union member's equal rights to vote and participate in union affairs under the LMRDA does not grant an employer license to insinuate itself in union affairs by playing on the divided loyalties of a supervisor.
 
 
 22
 Even though Local 22 is opposed to enforcement of the Board's order and to the adoption of a per se rule, we agree with decisions concluding that employer acquiescence in supervisory participation in union collective bargaining matters is unlawful, regardless of whether or not the employer actually attempts to interfere. Given the oft-stated interest of the Board in avoiding "any possibility of abuse," Mon River Towing, 421 F.2d at 8, and recognizing that the Board possesses a special understanding of industrial situations and is in the best position to evaluate the interests of both labor and management in "the diverse circumstances of particular cases," id. at 8, quoting NLRB v. United Steelworkers of Am., 357 U.S. 357, 362-363, 78 S.Ct. 1268, 1271-1272, 2 L.Ed.2d 1383, this Court believes that a per se rule best serves the interests of the employee in the long run and will be most workable across the broad spectrum of cases that arises. It is entirely appropriate for the Board to protect employee representation in collective bargaining from employer influence by prohibiting supervisory participation that might interfere or give the appearance of interfering with employee rights. Local 636, 287 F.2d at 357, 358; NLRB v. Employing Bricklayers' Ass'n, 292 F.2d 627, 628-629 (3d Cir.1961); Mon River Towing, 421 F.2d at 9. The responsibilities of Fryar's Union presidency include Union-employer dealings, subjecting him to conflicting loyalties and interests. Consequently it was appropriate for the Board to conclude that he may not serve in his Local 22 positions while he is a supervisor as the Company's superintendent.
 
 
 23
 The Board's order will be enforced in full.
 
 
 
 *
 According to amicus curiae, the construction industry is unique in that it is characterized by sporadic and transitory employment opportunities for individual workers (Br. 8)