**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**NORTHEASTERN UNIVERSITY, Respondent.**

**No. 82–1578.**

United States Court of Appeals, First Circuit.

Argued Feb. 4, 1983.

Decided May 18, 1983.

Linda B. Weisel, Atty., Washington, D.C., with whom William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and Helen L. Morgan, Atty., Washington, D.C., were on brief, for petitioner.

Herbert L. Turney, Boston, Mass., with whom Widett, Slater & Goldman, P.C., Boston, Mass., was on brief, for respondent.

Before ALDRICH and BREYER, Circuit Judges, and ZOBEL,* District Judge.

BREYER, Circuit Judge.

Northeastern University challenges the legality of an NLRB-certified union election among its transportation workers. Its claims concern the status and activities of James Antonizick, the coordinator of its

* Of the District of Massachusetts, sitting by designation.

transportation department. Northeastern considered Antonizick a "supervisor," ineligible to participate in the election; the union considered him an "employee," eligible to work for and to vote for the union. The Board's regional director refused to decide the question before the vote. After the election, which the union won 6 to 4, the regional director considered Northeastern's argument that Antonizick was a supervisor and undertook his own investigation. He concluded that even if Antonizick was a supervisor, Antonizick's pro-union activities were not "coercive;" thus, the election was valid. The Board denied Northeastern's request for further consideration of the matter and upheld the regional director's decision. Northeastern refused to bargain; the Board ordered it to do so, *In re Northeastern University,* 261 N.L.R.B. No. 140 (May 19, 1982); and we now have before us the Board's application for the enforcement of its order.

 At the outset Northeastern argues that the regional director should have decided Antonizick's status before the election. Northeastern did not know whether or not it could control Antonizick's pro-union activity. While it might be expected to control the pro-union activity of a "supervisor," any effort to control the pro-union activity of an "employee" could amount to an unfair labor practice. *See* 29 U.S.C. § 158(a). These factors weigh in favor of a speedy pre-election decision. On the other hand, the regional director might have believed that to decide this disputed factual issue before the election would have meant delaying the election or interfering with the election campaign. The balancing of these considerations is for the agency, not the court. And, we see nothing unlawful about the agency's conclusion; it is not "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A); *see, e.g., Fall River Savings Bank v. NLRB,* 649 F.2d 50, 56, (1st Cir.1981) ("wide degree of discretion"); *Melrose-Wakefield Hospital Association, Inc. v. NLRB,* 615 F.2d 563, 566–67 (1st Cir.1980).

Northeastern's main argument is related to its claim that "supervisor" Antonizick unlawfully influenced the election results. *See, e.g., ITT Lighting Fixtures v. NLRB,* 658 F.2d 934, 937 (2d Cir.1981) (election invalid if "supervisor's conduct reasonably tended to have such a coercive effect on the employees that it was likely to impair their freedoms of choice"); *Fall River Savings Bank v. NLRB,* 649 F.2d at 56 (danger of supervisor's conduct causing "employees to support the union out of fear of retaliation"); *Turner's Express, Inc. v. NLRB,* 456 F.2d 289, 291 (4th Cir.1972) ("The law is clear that supervisory pressure upon employees in the selection of a bargaining representative is coercive."). It argues that the regional director rejected its charge (that Antonizick "coerced" his fellow employees into casting pro-union votes) on the basis of testimony and affidavits that he obtained during his own investigation. It adds that it could not obtain effective Board review of this decision because the Board would not let it see the regional director's investigatory material nor would it review that material itself. Under the Board's rules this investigatory material is not part of the record before the Board or before this court. 29 C.F.R. § 102.-69(g)(1)(ii). Northeastern attacks this procedure, noting that other courts have criticized it. *See NLRB v. Eskimo Radiator Manufacturing Co.,* 688 F.2d 1315 (9th Cir.1982) (*per curiam*) (limiting *Consolidated Liberty, infra,* and *Advanced Systems, infra*); *NLRB v. Advanced Systems, Inc.,* 681 F.2d 570 (9th Cir.1982); *NLRB v. Allis-Chalmers Corp.,* 680 F.2d 1166 (7th Cir.1982); *NLRB v. Fuelgas Co.,* 674 F.2d 529 (6th Cir.1982) (following *Revco, infra*); *NLRB v. Consolidated Liberty, Inc.,* 672 F.2d 788 (9th Cir.1982); *NLRB v. Forest City Enterprises, Inc.,* 663 F.2d 34 (6th Cir.1981) (following *Reichart, infra*); *NLRB v. Decibel Products, Inc.,* 657 F.2d 727 (5th Cir.1981), *vacated and remanded for reconsideration in light of North Electric, infra,* 671 F.2d 908 (5th Cir.1982) (*per curiam*); *NLRB v. Klingler Electric Corp.,* 656 F.2d 76 (5th Cir.1981); *Revco, D.S., Inc. v. NLRB,* 653 F.2d 264 (6th Cir.1981) (limiting

*North Electric, infra, Curtis Noll, infra,* and *Prestolite, infra* ); *Reichart Furniture Co. v. NLRB,* 649 F.2d 397 (6th Cir.1981) (*per curiam* ) (limiting *Prestolite, infra,* and *North Electric, infra* ); *NLRB v. North Electric Co.,* 644 F.2d 580 (6th Cir.1981); *Randall, Burkart/Randall Division v. NLRB,* 638 F.2d 957 (6th Cir.1981) (limiting *Prestolite, infra* ); *NLRB v. Curtis Noll Corp.,* 634 F.2d 1027 (6th Cir.1980) (*per curiam* ); *NLRB v. RJR Archer, Inc.,* 617 F.2d 161 (6th Cir.1980); *Prestolite Wire Division v. NLRB,* 592 F.2d 302 (6th Cir.1979).

■ The need for the NLRB's procedure presumably arises out of the fact that the Board is not simply a court, but rather, like many agencies, combines adjudicatory and investigatory functions. Looking at the Board solely as if it were a court, one might wish to have all matters made public, in the interest of fairness. However, viewing the Board as an investigator, one can understand the need for confidentiality. If employers, as a matter of course, could see whatever turned up during a director's investigation, the Board's ability to obtain information by promising workers at least some degree of confidentiality would be impaired. We will not overturn the Board's efforts to reconcile these conflicting needs of its two separate functions unless the resulting compromise is unreasonable. *Cf., e.g., NLRB v. A.J. Tower Co.,* 329 U.S. 324, 330, 67 S.Ct. 324, 327, 91 L.Ed. 322 (1946).

■ In this instance the Board's refusal to review, or to allow Northeastern to review, the regional director's investigatory material was reasonable and therefore lawful. First, the regional director's conclusion did not rest upon the confidential information, but rather was drawn from, and was adequately supported by, the public record. The regional director assumed for the sake of argument "that Antonizick [was] a supervisor within the meaning of the Act." He went on to "constru[e] all other factual issues in accordance with the Employer's version of the facts ...." He then concluded that Antonizick had not "coerced" others into voting for the union, on the grounds that: (1) Antonizick was "at best a

low-ranking supervisor"; (2) Antonizick "made no threats of reprisal for failure to support" the union; (3) Northeastern "made no attempt to inform the employees that it had not authorized and did not ratify Antonizick's activities"; and (4) Northeastern did not "try to dissipate any possible coercive effects" of Antonizick's activities.

These conclusions have adequate support in the record: Antonizick asked other employees to sign union cards and attended union meetings; he spoke in favor of the union. But he also later disavowed the union and, regardless, there is no evidence of any specific threats of retaliation. To the contrary, why, if Northeastern feared such coercion, did it not tell its employees it would stop Antonizick from later retaliating? We have held, in related circumstances, that "without evidence of any threats, express or implied, [the fact that supervisors favor a union] does not compel a finding of coercion." *Fall River Savings Bank v. NLRB,* 649 F.2d at 57. *But compare the Second Circuit's view in ITT Lighting Fixtures v. NLRB,* 658 F.2d at 937. And, that holding governs here.

Second, the Board's rules impose the burden of showing "coercion"—or at least showing a material factual issue regarding coercion—upon Northeastern. *See* 29 C.F.R. §§ 102.67(c), 102.69(d). It is free to introduce whatever relevant evidence it has available. *See id.* at §§ 102.69(c)(2), (c)(4), (g)(3); *NLRB v. Eskimo Radiator Manufacturing Co.,* 688 F.2d at 1319 (remand unnecessary where employer objections are insufficient); *NLRB v. Fuelgas Co.,* 674 F.2d at 531 (same).

Third, the investigation was relevant to the regional director's decision in only a very limited, and negative, sense. The investigation failed to upset the conclusions that the regional director would have drawn (and did draw) without it. The regional director did not rely upon it to *refute* any of Northeastern's factual allegations; he simply found no additional *support* in his investigation for Northeastern's conclusion.

Finally, we have no reason to believe that disclosure would reveal any significant ad-

ditional evidence of coercion. We do not claim that disclosure would not help Northeastern. Even a fishing expedition sometimes produces a few fish. We simply hold that, where the regional director does not rely upon the withheld investigatory material to refute the employer's factual allegations, where the employer is free to introduce his own evidence, and where the employer has stated no convincing reason to believe that the material contains significant new information, the agency's decision to withhold that material is reasonable, and therefore lawful. We thus need not reach the more difficult questions concerning the "confidentiality" of such material that have worried other courts.

██ We turn to one final point that gives us cause for concern. At the end of his opinion the regional director wrote, "the Board will not allow an employer to take advantage of its own inability or refusal to control its supervisors." If we take this statement at face value, the regional director seems to find against Northeastern in part because it did not tell Antonizick to stop campaigning for the union. We recognize the well-established rule that an employer who "stand[s] idly by after learning that one of its supervisors has engaged in prounion or antiunion conduct" may be precluded from raising that supervisor's conduct as an objection to the union election. *NLRB v. Welfed Catfish, Inc.,* 674 F.2d 1076, 1078–79 (5th Cir.1982); *see Fall River Savings Bank v. NLRB,* 649 F.2d at 56 n. 5. But given the director's own refusal to clarify Antonizick's status before the election, how could the employer reasonably have fired Antonizick or restricted his activities? Since there was a very real possibility that Antonizick would be found to be an "employee," to do so would have invited an unfair labor practice charge under 29 U.S.C. § 158(a). Thus, for the Board to ground its decision on this failure would be improper. *See ITT Lighting Fixtures v. NLRB,* 658 F.2d at 942.

A more thorough reading of the regional director's opinion and the record, however, have convinced us that the regional director did not base his conclusion upon this failure. Rather, the failure that he complains of is Northeastern's failure to tell the workers that Antonizick would not be allowed to retaliate against those who cast anti-union votes. The company could have taken this precaution regardless of Antonizick's status. We conclude that the regional director's sentence, whether or not we take it literally, is a superfluous though unwise bit of dicta.

For these reasons, the Board's order is *Enforced.*